OPINION OF THE COURT
Kaye, J.
Under New York City’s Rent Stabilization Law, a landlord *491 need offer a renewal lease only to a tenant of record, and is not obligated to offer a renewal lease to a relative of the tenant who occupies the apartment with the tenant during a portion of the lease term.
Catherine Sullivan rented apartment 12J in an apartment building owned and operated by defendant, Brevard Associates, at 245 East 54th Street in Manhattan under a renewal lease, with the term beginning October 1, 1981 and ending September 30, 1982. The lease, a standard form of apartment lease issued by the Real Estate Board of New York, designated Catherine as "You, the Tenant,” and Catherine alone signed the lease in that capacity, although the lease form contained two signature lines for "Tenant,” the second of which was left blank. Paragraph 1 of the lease provided in relevant part: "You shall use the Apartment for living purposes only. Subject to the laws which prohibit discrimination, only You and members of your immediate family, as defined by applicable law, and servants, if any, may live in the Apartment.” In August 1981, before the lease was signed, plaintiff, Susan Sullivan, moved into the apartment with her sister and Catherine began to spend two or three nights a week away from the apartment with a friend. In November 1981, Catherine moved into her friend’s apartment and stayed at apartment 12J only occasionally. She retained a key, however, and indicated that she might move back in the future. Susan remained in the apartment and, beginning September 1981, paid the rent each month with her checks.
On June 3, 1982, Brevard served Catherine, as tenant, with a notice to cure, claiming that Susan’s use and occupancy of the apartment constituted a violation of a substantial term of the tenancy. Susan then commenced this action seeking a judgment declaring her to be a tenant properly in possession of the premises. Initially, Special Term denied Susan’s motion for summary judgment, finding an absence of proof as to whether she and her sister ever jointly occupied apartment 12J. Following depositions of Susan and Catherine, Brevard sought summary judgment dismissing the complaint and Susan cross-moved for summary judgment. Special Term granted Susan’s cross motion, declaring that she was a tenant with the right to possession of the apartment by virtue of her joint occupancy of the apartment with her sister. The Appellate Division affirmed, without opinion, and we granted leave.
*492 Due to the passage of time — the lease having expired September 30, 1982 — the question before us is whether the landlord was obligated to offer Susan a renewal lease. Susan’s right to occupy the apartment until September 30, 1982, is no longer in issue. Only the consequence of that occupancy remains.
Under the City Rent Stabilization Law, a renewal lease must be offered to a "tenant” (Administrative Code of City of New York § YY51-6.0 [c] [4]). Thus, the determinative question is whether Susan was a tenant. Only Catherine was designated as "the tenant” in the lease; although Susan was already living in the apartment at the time the lease was signed, she was not a party to it. Our inquiry then turns to whether, for purposes of renewal rights, any provision of the law alters the definition of tenant found in the lease. We conclude that Susan was not a tenant entitled to a renewal lease, and that the Appellate Division order declaring her a tenant properly in possession of the apartment should therefore be reversed.
Susan urges that, under the laws applicable to rent control, a sister’s joint occupancy with the tenant of record would entitle the sister alone to possession, use or occupancy of the apartment during the lease term and to continued possession beyond the lease term, and that these principles should apply as well to a rent-stabilized apartment. Without reaching the question whether Susan would be considered a member of Catherine’s immediate family entitled under the rent control laws to possession beyond the lease term,* **§we conclude that such a result does not in any event obtain under rent stabilization.
New York City’s Rent Control Law broadly defines "tenant” as "tenant, subtenant, lessee, sublessee, or other person entitled to the possession or to the use or occupancy of any housing accommodation” (Administrative Code § Y51-3.0 [m]; Rent and Eviction Regulations of Housing and Development Administration § 2 [o]; Rent and Eviction Regulations of Division of Housing and Community Renewal, 9 NYCRR 2200.2 [o]). The State Rent and Eviction Regulations further provide *493 (§ 56 [4], 9 NYCRR 2104.6 [d]; 9 NYCRR 2204.6 [d]) that no occupant may be evicted "where the occupant is either the surviving spouse of the deceased tenant [of record] or some other member of the deceased tenant’s family who has been living with the tenant.” In Matter of Herzog v Joy (74 AD2d 372), relying on these provisions, the Appellate Division refused to set aside a determination of the Rent Commission that an apartment did not qualify for decontrol, and we affirmed for reasons stated by that court (53 NY2d 821). Although the tenant of record no longer resided in the apartment, her sister had lived with her for about a year before the tenant moved out, and the sister remained the sole occupant. As the Appellate Division concluded, the sister could not be evicted "since she [was] entitled to possession by virtue of her relationship to, and contemporaneous occupancy of the apartment with * * * the original tenant” (74 AD2d, at p 376).
The language, purpose and scope of the Rent Stabilization Law persuade us that the rationale of Matter of Herzog v Joy, if even generally applicable to rent control, does not apply to rent-stabilized apartments.
Neither the rent-control definition of "tenant” nor its provision limiting eviction of occupants upon the death of the tenant — the premises of Matter of Herzog v Joy — is found in the Rent Stabilization Law, and we conclude that in both instances these omissions from the law were deliberate. Although other statutes and regulations contain a definition of the term "tenant” identical to that set forth in the New York City Rent Control Law (see, McKinney’s Uncons Laws of NY § 8582 [7] [Emergency Blousing Rent Control Act]; Rent and Eviction Regulations of Division of Housing and Community Renewal, 9 NYCRR 2100.2 [g]; Emergency Tenant Protection Regulations of Division of Housing and Community Renewal, 9 NYCRR § 2500.2 [h]), the City Rent Stabilization Law does not. Indeed, there is conspicuously absent from the Rent Stabilization Law any definition of the term "tenant,” leaving only the lease definition of tenant. (Compare, Cooper v 140 E. Assoc., 27 NY2d 115, with Burns v 500 E. 83rd St. Corp., 59 NY2d 784, 786 where, in other contexts, we have given significance to the failure of the Rent Stabilization Law to adopt the rent-control definition of "tenant”.) Additionally, the Rent Stabilization Law does not contain any provision similar to rent control regulation section 56 (4) limiting the circumstances under which occupants may be evicted following the death of the tenant of record. Again, the fact that such a *494 provision has been omitted from the Rent Stabilization Law cannot be overlooked, especially since it has been included, where intended, in other regulations (see, Rent and Eviction Regulations of Division of Housing and Community Renewal, 9 NYCRR 2104.6 [d]). Neither of the premises of Matter of Herzog v Joy being applicable to rent-stabilized apartments, the result reached in that case is therefore inappropriate.
The Rent Stabilization Law, moreover, sets forth its own specific scheme of regulation, different from rent control. Rent stabilization protects only the primary residence of the tenant. It expressly excludes dwelling units "not occupied by the tenant, not including subtenants or occupants, as his primary residence,” and a landlord may seek "to recover possession on the ground that a housing accommodation is not occupied by the tenant as his primary residence” (Administrative Code § YY51-3.0 [a] [1] [f]). Under the Rent Stabilization Law a Stabilization Code need only "requir[e] owners to grant a one or two year vacancy or renewal lease at the option of the tenant” (Administrative Code § YY51-6.0 [c] [4]). Section 60 of the Stabilization Code of the Rent Stabilization Association of New York City, Inc., approved pursuant to the Rent Stabilization Law provides that "[e]very owner shall notify the tenant in occupancy * * * prior to the end of the tenant’s lease term, by mail, of such termination and offer to renew the lease * * * and shall give such tenant a period of 60 days to renew such lease and accept the offer”. Conversely, section 54 (E) (1) of the Stabilization Code provides that an owner shall not be required to offer a renewal lease to a tenant if he establishes "that the tenant in possession maintains his primary residence at some place other than at such housing accommodations.” Under these provisions, "only the tenant may renew a lease; family members have no such right after the tenant has vacated.” (Tagert v 211 E. 70th St. Co., 63 NY2d 818, 821.)
Our refusal to ignore this scheme of the Rent Stabilization Law, in favor of concepts borrowed from the Rent Control Law, is consistent with the purpose and scope of rent stabilization, which is a less onerous form of regulation than rent control (8200 Realty Corp. v Lindsay, 27 NY2d 124, 136-137). Rent control subjects an ever-decreasing number of rental units to stringent controls. Rent stabilization, on the other hand, was adopted in 1969 as a "compromise solution” under which rents of previously unregulated post-1947 housing could be regulated while "encouraging future construction of housing accommodations by allaying the fears of builders con *495 cerned about possible further extension of rent control to new construction” (8200 Realty Corp. v Lindsay, 27 NY2d 124, 136-137, supra). The Rent Stabilization Law recognizes the greater stringency of rent control regulation by imposing rent control of units as a penalty for landlords who fail to become or remain members in good standing of the Real Estate Industry Stabilization Association (Administrative Code § YY51-6.0 [a]).
In these circumstances, we find no basis for concluding that Susan was a "tenant” entitled to a renewal lease. Neither the lease nor any law governing rent-stabilized apartments constitutes her a tenant.
Finally, by accepting her rent checks Brevard did not waive its right to contest Susan’s continued occupancy. There is no evidence that, by simply accepting her checks, Brevard intended to relinquish a known right. Even assuming that Brevard immediately noticed that the monthly rent checks were from someone other than the tenant, still there is no evidence that Brevard knew or should have known at the time that Susan was actually occupying the apartment, or that her occupancy was a substantial violation of the lease.
Accordingly, the order of the Appellate Division should be reversed, with costs, plaintiff’s cross motion for summary judgment denied, defendant’s motion for summary judgment granted, and judgment granted in favor of defendant declaring that plaintiff is not entitled to a renewal lease.
Chief Judge Wachtler and Judges Jasen, Meyer, Simons, Alexander and Titone concur.
Order reversed, etc.

 The term "immediate family” under rent control has been defined to include "a husband, wife, son, daughter, stepson, stepdaughter, father, mother, father-in-law or mother-in-law.” (McKinney’s Uncons Laws of NY § 8605 [Local Emergency Housing Rent Control Act § 5, L 1962, ch 21, § 1, as amended by L 1980, ch 69].)