OPINION OF THE COURT
Jack Dubinsky, J.
Petitioner commenced this holdover proceeding on the ground respondent Hawkins, niece of decedent Payne, was not entitled to remain in possession after the death of Payne.
On November 28, 1984, respondent entered into a stipulation consenting to a final judgment of possession in favor of petitioner. Respondent now moves to vacate the stipulation and judgment on the ground Emergency Operational Bulletin 85-1 issued December 10, 1985 by the Division of Housing and Community Renewal (DHCR) entitles her to retain the apartment.
The apartment, 14-U at premises 40 West 135th Street, New York City, is rent stabilized. Respondent resided there with her aunt, who was the tenant of record. Respondent claims she lived in the apartment with her aunt since the inception of the aunt’s tenancy. Petitioner asserts respondent moved in some time after the aunt took occupancy. In or about May 1984 the aunt passed away. Respondent then asked petitioner to assign the lease. Petitioner refused. A notice to quit was served upon respondent and subsequently this action was commenced, culminating in the stipulation and judgment at issue.
The DHCR Bulletin provides for certain family members (therein defined) to succeed to the named tenant’s rights to renew a lease. It specified, inter alia, that a niece who has continuously resided in the dwelling unit as a primary resident since the beginning of the tenancy is entitled to first refusal of a new lease.
The bulletin attempts to overcome the Court of Appeals decision in Sullivan v Brevard Assoc. (66 NY2d 489). In Sullivan, the tenant’s sister who lived in the rent-stabilized apartment contemporaneously with the tenant sought a renewal lease after the tenant left. The court held the tenant’s sister was not entitled to a renewal lease. The court pointed out the New York City Rent Stabilization Law deliberately *664 omitted any definition of the word "tenant”[1] because the law intended the term to mean only the person named as tenant of record in the existing or expiring lease. Accordingly, the court reasoned, the right of renewal is possessed solely by said tenant and no one else, not even a member of the tenant’s immediate family who occupied the apartment contemporaneously with the tenant and remained there after the tenant moved out. Nevertheless, DHCR in disregard of this statutory limitation and for the purpose of overriding the Sullivan decision, issued Emergency Operational Bulletin 85-1 to provide for succession by various family members to the named tenant’s rights to renew a lease and thus to the named tenant’s rights of tenancy. There is nothing in the enabling statutes enacted by the New York State Legislature or in the New York City Rent Stabilization Law which gives DHCR authority to override a holding of the Court of Appeals.[2] Hence, the bulletin is invalid and respondent cannot derive any rights therefrom.
Although neither party in the instant proceeding referred to the State Administrative Procedure Act, the court will address the statute. It provides the procedure for an agency to adopt rules relating to its functions. Rules are defined in section 102 of this statute as including regulations issued by the agency.
State Administrative Procedure Act § 202 (1) requires compliance with certain procedures (notice, an opportunity for the public to comment, public hearing and similar requirements) before a rule can be adopted by an agency. Subdivision (6) of section 202 provides an exception to these requirements. Subdivision (6) reads: "Notice of emergency adoption, (a) Notwithstanding any other provision of law, if an agency finds *665 that the immediate adoption of a rule is necessary for the preservation of the public health, safety or general welfare and that compliance with the requirements of subdivision one of this section would be contrary to the public interest, the agency may dispense with all or part of such requirements and adopt the rule on an emergency basis.” The Sullivan case was decided November 19, 1985. Emergency Bulletin 85-1 was issued December 10, 1985, too short a time after Sullivan to have complied with subdivision (1) of section 202. Subdivision (6) is, however, of no help to DHCR. The State Administrative Procedure Act relates only to procedure. Although subdivision (6) may be said to have obviated certain procedural requirements regarding the issuance of the bulletin, it in no way can be said to have authorized the substance of the bulletin. There was no legislative authority to do so (see, Freitas v Geddes Sav. & Loan Assn., 63 NY2d 254, 263-264).
In any event, even were the court to give effect to the DHCR Bulletin it would not help respondent in this case. The bulletin was issued on December 10, 1985. Respondent consented to the final judgment of possession in November 1984. Respondent, citing Matter of Kevin McC. v Mary A. (123 Misc 2d 148 [1984]), argues the bulletin should be retroactively applied. That case specifically states a remedial statute will only be applied to cases which have not reached final judgment when the statute becomes effective (citing cases). In the matter before this court final judgment was granted a year before the DHCR Bulletin was issued. Accordingly, in the circumstances of this case, respondent cannot call upon the bulletin for help.
Respondent’s motion to vacate the stipulation and judgment is denied.
The judgment and warrant remain in full force and effect. A new 72-hour marshal’s notice is required.

. Unlike under New York City Rent Stabilization, the New York City Rent Control Law contains a definition of the word "tenant”. The Rent Control Law defines the term as "tenant, subtenant, lessee, sublessee, or other person entitled to the possession or to the use or occupancy of any housing accommodation” (Administrative Code of City of New York § Y51-3.0 [m]).

. In a press release issued by the Office of Governor Mario Cuomo when DHCR promulgated Emergency Operational Bulletin 85-1, Commissioner William E. Eimicke, State Director of Housing, acknowledged the bulletin was stop-gap action by DHCR to counteract the Sullivan decision and afford the Legislature an opportunity to pass enabling legislation. A copy of the press release is made part of the record in this proceeding.
The plight of persons adversely affected by the Sullivan decision certainly merits legislative attention. There is no indication what, if anything, the Legislature intends to do about it. DHCR is not, however, invested with authority to act by agency fiat in the interim.