OPINION OF THE COURT
Helen E. Freedman, J.
Defendant Michael Brown is the surviving "gay life part *987 ner” of Robert Hayes, who died of AIDS in February 1985. Since Robert Hayes was the only named tenant on the lease, plaintiff landlord now seeks to evict Michael Brown. In what appears to be a case of first impression, I hold that a gay life partner has the same right as a family member to a vacancy lease under the Rent Stabilization Law (Administrative Code of City of New York § YY51-1.0 et seq.) and that Michael Brown is entitled to remain in the apartment.
On December 13, 1985, I granted summary judgment to the landlord and rejected defendant’s claim that he was entitled to a renewal lease or, in the alternative, a vacancy lease based on recent court interpretation of the Rent Stabilization Law. Defendant has moved to renew and reargue that decision on the basis of a subsequent Emergency Operational Bulletin issued by the State Division of Housing and Community Renewal (DHCR). I now grant defendant’s motion for the reasons stated below.
The original decision in this case followed closely both in time and substance the New York State Court of Appeals decision in Sullivan v Brevard Assoc. (66 NY2d 489 [1985]). That decision held that in view of the absence of a definition of "tenant” in the Rent Stabilization Law (Administrative Code § YY51-1.0 et seq.) and Code of the Rent Stabilization Association of New York City, Inc., as contrasted with the Rent Control Laws and Rent and Eviction Regulations, a landlord was required to tender renewal leases only to the "named” tenant on the lease. While the Sullivan case involved two sisters, the language was so restrictive that it appeared that even surviving spouses and minor children were not protected for purposes of lease renewals.
In response to the Sullivan decision, DHCR issued Emergency Operational Bulletin No. 85-1 which both defined "tenant” and attempted to ameliorate what were perceived to be the harsh effects of Sullivan. The Operational Bulletin (issued a day or two before the previous decision in this case was signed), requires that renewal leases be offered to a tenant and his or her "immediate family” in rent-stabilized housing accommodations. "Immediate family” is specifically defined as "a husband, wife, son, daughter, father, mother.” The Bulletin further provides that an owner of a rent-stabilized housing accommodation is required to offer a "non-immediate” family member who has continuously resided in the dwelling of a *988 primary resident since the commencement of the tenancy or the beginning of the relationship, the right to first refusal of a new lease — a vacancy lease. A nonimmediate family member is defined as a brother, sister, nephew, niece, uncle, aunt, grandfather, grandmother, grandson, granddaughter, father-in-law, mother-in-law, sister-in-law and daughter-in-law.
Plaintiff contends that the Operational Bulletin was not validly promulgated and, for that reason, the court impleaded DHCR. DHCR submitted an affidavit by the Deputy Commissioner for Rent Administration, Michael Mirabel, sworn to on March 12, 1986. He cited the rent law to the effect that: "unless such accommodations (rent stabilized dwellings) are subjected to reasonable rent and eviction limitations, disruptive practices and abnormal conditions will produce serious threats to the public health safety and general welfare. (Section YY51-1.0 of the Administrative Code of the City of New York).”
The Deputy Commissioner further stated that "the Commissioner has broad authority to administer the statute in a manner which best effectuates its purpose.” In fact, the Commissioner was in the process of completing and promulgating a Code pursuant to authority granted under Laws of 1985 (ch 888). In response to the emergency created by Sullivan v Brevard (supra), which "could have been used as a basis for the wholesale eviction of thousands of residents of stabilized apartments, regardless of their circumstances or relationships to the named lease [sic],” the New York State Director of Housing issued the Emergency Bulletin pending superseding legislation or Code revision. Until that occurs, DHCR continues to be responsible for the administration of the current law and in that capacity has provided its current interpretation of "tenant”.
Defendant claims that he is entitled to be treated as a surviving husband or wife, and is entitled to a lease renewal as an "immediate” family member. Although there is no written confirmation of his life partnership with Robert Hayes, defendant apparently lived with Hayes for seven years and cared for him during his final illness. The two men shared finances and gave each other love and moral support during the illnesses of other family members. Defendant’s argument is based on the fact that the relationship between the two men was equivalent to a spousal relationship and that failure to recognize it as such constitutes a denial of equal protection of the laws. In support of his position, defendant cites a *989 number of authorities from the criminal law prohibiting discrimination based on marital status or sexual orientation. These include: People v Onofre (51 NY2d 476 [sexual acts among consenting unmarried adults are not criminal]) and People v Uplinger (58 NY2d 936); Hardwick v Bowers (760 F2d 1202 [11th Cir 1985] [private sexual conduct between consenting adult homosexuals is constitutionally protected]).
It is clear that discrimination based on sexual preference or marital status is prohibited. Indeed, since the court’s first decision in this matter, the City of New York has amended the Administrative Code of the City of New York to provide that sexual preference may not be a basis for discrimination in housing, employment or public accommodations. (See, Amendment to Administrative Code § Bl-7.2.)
However, there are other factors to be considered in determining whether defendant should be deemed a surviving spouse. First, the Court of Appeals of this State very recently rejected an attempt to formalize relationships between homosexual lovers or, in effect, to create an "immediate” family relationship, in Matter of Robert Paul P. (63 NY2d 233 [1984]), by refusing to permit adoption. The high court said (p 238) adoption "is [not] a procedure by which to legitimize an emotional attachment”. Second, New York has refused to recognize any nonceremonial or common-law marriage since 1933. (See, Domestic Relations Law § 11.)
Moreover, to simply invalidate all classifications based on marital status might have severe repercussions. Wives and husbands have a host of legal-financial rights and obligations in conjunction with that marital status. These include rights to elective shares against wills, financial support obligations including alimony and equitable distribution rights, and rights of third parties to sue for medical expenses. None of these obligations and rights has been extended to unmarried lovers, whether heterosexual or homosexual. To find that Michael Brown is identical to a surviving spouse might impose substantial obligations upon him not contemplated here.
However, to find that he is not a surviving spouse does not mean that Michael Brown should not be deemed to be a family member for purposes of entitling him to a vacancy lease. The uncontroverted evidence is that his relationship to Robert Hayes was indeed as close as that of a family member. That kind of relationship is well characterized by the Appellate Division of this department in Matter of Adult Anony *990 mous II (88 AD2d 30 [1st Dept 1982]), an earlier case involving adoption by a homosexual lover. Honorable Sidney Asch, writing for the court, said: "The 'nuclear family’ arrangement is no longer the only model of life in America. The realities of present day urban life allow many different types of nontraditional families. In any event, the best description of a family is a continuing relationship of love and care, and an assumption of responsibility for some other person. Certainly that is present in the instant case.” (88 AD2d, at p 35.)
The Appellate Term of this department cited the above language in 420 E. 80th St. v Chin (115 Misc 2d 195 [1982], affd 97 AD2d 390). The court specifically rejected "artificial distinctions among various types of sexual, fraternal and economic relationships” (115 Misc 2d, at p 197) and refused to find that having a live-in lover of the same sex constituted a violation of a substantial obligation of a lease.
In the Operational Bulletin at issue a host of relatives who are living in the household are deemed to be family members and are given vacancy lease rights whether or not there is a loving relationship among them or whether indeed there exists any economic relationship or dependency. To deem such collateral relatives, some of whom have no blood relationship to each other, family members and to deprive the instant defendant, who has provided care and love through both a serious illness and death, of family member status would indeed be an arbitrary way to define family. (See, Matter of Adult Anonymous II, supra; 420 E. 80th St. v Chin, supra.) The equal protection clauses of the Constitution of the State of New York (art I, § 11) and the United States Constitution require that similarly situated persons must be treated in the same way where there is no rational reason for separate classification. To interpret the Operational Bulletin so as not to include the defendant as a family member would render it unconstitutional in that there is no rational reason to exclude persons in Michael Brown’s situation from being classified as a family member, when in fact, the relationship was much closer than that of most family members. Furthermore, it would be inconsistent with the purpose of the Bulletin as stated by the Deputy Commissioner to prevent "wholesale eviction^] * * * regardless of * * * circumstances” to exclude a person in defendant’s position.
In view of the above, plaintiffs motion for summary judgment is denied and defendant’s cross motion is granted to the extent that defendant is entitled to a vacancy lease.
*991 Settle order providing for tender of vacancy lease with appropriate rent increase.