*872 OPINION OF THE COURT
Robert D. Lippmann, J.
This is a summary judgment motion in a holdover proceeding in which petitioner seeks to recover possession of a rent-stabilized apartment at the expiration of the lease term of the deceased tenant of record.
The decedent entered into possession of apartment 11H at 176 East 77 Street, New York City, on October 1, 1972 under a written lease dated July 28, 1972 and continued to reside there until her death on October 23, 1984. Elisa Davidson, decedent’s daughter, lived in the subject apartment, first with her parents and then after their separation in October 1977, with her mother. Petitioner commenced the instant proceeding upon the expiration of the lease term on September 30, 1986 by serving process on the executrix for the estate of decedent tenant. Elisa was not served.
Respondent cross-moves to dismiss pursuant to CPLR 3211 (a) (10), alleging first that Elisa is a necessary party and, therefore, this proceeding cannot be adjudicated without her being joined as a respondent; second, that Elisa’s status as a family member of the tenant of record entitles her to a renewal lease.
Is Elisa a necessary party to this proceeding?
A party is deemed necessary when the interest of such a party "might be inequitably affected by a judgment in the action”. (CPLR 1001 [a].) It is not disputed that Elisa took occupancy of the apartment with her parents. According to her affidavit, her parents commenced occupancy of the subject premises in January 1963 (not 1972) pursuant to a written lease, which unfortunately is lost, but is not refuted by petitioner. Elisa was born November 7, 1963. Her high school records for 1979 to 1982 confirm that she was living with her mother rather than her father after her parents’ separation and divorce. Between 1982 and 1986 she attended Duke University in North Carolina during which time she returned to the subject premises on school holidays and summer vacations while her mother was alive. She also spent a portion of this time with her father. Currently she is attending Vanderbuilt Law School in Tennessee. She states she intends to return to the apartment upon completion of her legal studies.
Petitioner contends the apartment is not Elisa’s primary residence. This issue will be dealt with later.
Were I to grant petitioner’s motion, petitioner would take *873 possession of the premises and Elisa would be evicted without having had an opportunity to defend herself on the merits in this suit. It is therefore evident that if petitioner prevailed, Elisa would be adversely affected by the outcome of the proceeding. In November Realty Corp. v McComb (279 App Div 735 [1st Dept 1952], Iv denied 279 App Div 790), the court held that a sublessee was a necessary party to a summary proceeding for possession of premises by a landlord against a tenant where the tenant had sublet with the landlord’s knowledge and the landlord had collected monthly rent from the sublessee. If a sublessee under given circumstances is deemed a necessary party, then a person asserting the rights of a tenant is a fortiori a necessary party.
CPLR 1001 (b) makes clear that joinder is at all times to be preferred to dismissal under 3211 (a) (10). (See, Siegel, Practice Commentary, McKinney’s Cons Laws of NY, Book 7B, C3211:34, at 37.)
CPLR 3025 (c) specifically authorizes courts to permit pleadings to be amended to conform with the evidence submitted. Absent surprise or prejudice, amendments are to be freely granted. (Conthur Dev. Co. v Dacar Garage Corp., 119 Misc 2d 410 [Civ Ct, NY County 1983].) The court deems Elisa Davidson to be a necessary party and since neither petitioner nor respondent will be prejudiced by an amendment, the court, in the furtherance of judicial economy, allows petitioner to amend the pleadings to join Elisa Davidson as a respondent.
The second and more substantial issue raised by the present motion is whether Rent Stabilization Code § 2523.5, effective May 1, 1987 should be the law controlling on a motion instituted prior to the promulgation of the code. For the reasons discussed below, I find the answer to be yes.
The petition in this holdover proceeding was filed in October 1986. The instant motion for summary judgment brought on by petitioner was briefly argued before me March 4, 1987. Thereafter the parties submitted written memoranda of law in which petitioner relied on Sullivan v Brevard Assocs. (66 NY2d 489 [1985]) and respondent on the State Division of Housing and Community Renewal’s (DHCR) Emergency Operational Bulletin No. 85-1 (the Bulletin hereinafter).
In Sullivan v Brevard Assocs. (supra) the Court of Appeals ruled that a landlord of a rent-stabilized apartment is not required to offer a renewal lease to a relative who has occupied an apartment with the tenant of record during a portion *874 of the lease term. In so holding, the court distinguished between rent control laws which grant the right to renewal leases to members of the tenant’s family, and the Rent Stabilization Law which did not. "[T]he Rent Stabilization Law does not contain any provision similar to rent control regulation 56 (4) limiting the circumstances under which occupants may be evicted following the death of the tenant of record.” (Supra, at 493.) "Rent stabilization protects only the primary residence of the tenant.” (Supra, at 494.) It is upon the authority of Sullivan that petitioner herein grounds its summary judgment motion; the tenant died, the leasehold has expired, the landlord has no obligation to offer a lease renewal to the daughter of the deceased tenant. According to Sullivan, petitioner prevails and Elisa will be evicted.
As illustrated by the case at bar, Sullivan (supra) opened the floodgates to massive evictions of countless people. In response, DHCR issued the Bulletin intended as an interim emergency measure pending the promulgation of the new Rent Stabilization Code. The Bulletin’s provisions extend the right to renewal leases to family members who have resided in a rent-stabilized apartment as their primary residence for a specified time with the named tenant prior to that tenant’s death. Respondent herein claims its rights under the Bulletin.
Petitioner challenged the validity of the Bulletin; respondent countered by citing Two Assocs. v Brown (131 Misc 2d 986), a Supreme Court case which upheld the validity of the Bulletin. In April 1987, while the instant motion was pending, the Appellate Division, First Department, reversed Two Assocs. (127 AD2d 173), declaring the Bulletin invalid-as exceeding the Commissioner of DHCR’s authority to create a new protected class not covered by the Rent Stabilization Code.
The court recognized the power of the Commissioner to issue emergency bulletin and reviewed the scope of such measures: they are limited to interpreting or administering existing regulations. To create a new law entitling a new broad class of people to a lease renewal is to exceed the limited function of an emergency measure. "The Commissioner,” the court further held (at 183), "may not so act in the absence of a legislative amendment of the Law or without properly moving to amend the Code as specified in the [Rent Stabilization] Law.” Moreover, the Bulletin’s validity was attacked because it attempted to create a new law without having been promulgated in accordance with the procedure for rule making set forth in State Administrative Procedure *875 Act article 2. Finally the measure was attacked as exceeding its temporal scope because pursuant to the State Administrative Procedure Act, emergency measures can remain in force no longer than 60 days.
The court also traced the source of authority of DHCR to enact rules and regulations. It found that the Rent Stabilization Law as amended (Administrative Code of City of New York § YY51-6.0 [b], eff Aug. 2, 1985, L 1985, ch 888, § 11 [now Administrative Code § 26-511 (b)]) "authorizes the Commissioner of DHCR to promulgate amendments to the Code, but also requires that such amendments shall not be adopted without first being submitted to the Commissioner of the Department of Housing Preservation and Development, to make comments and recommendations, after which time the Commissioner of DHCR must formally review these comments or recommendations, following which the Commissioner must hold a public hearing.” (127 AD2d, at 181.)
In short, the Bulletin is invalid because it sought to accomplish what only an amendment or a legislative enactment could do. As the Bulletin tumbled into the abyss of invalidity, respondent’s reliance thereon lost all its support. As a further consequence of the invalidity, Sullivan (supra) was controlling and petitioner took the high ground.
But then, only two days after the Two Assocs. case was decided, DHCR issued a new Rent Stabilization Code, effective May 1, 1987. The amendments contained in the new code were promulgated pursuant to the authority vested in the Commissioner of DHCR by the Rent Stabilization Law and in accordance with State Administrative Procedure Act procedure. Measured against the required authority and procedure for DHCR amendments traced by Two Assocs. (supra), the new code appears free from attacks of invalidity, at least based on lack of legislative authority.
Section 2523.5 of the new code resurrects that provision of the overturned Bulletin which afforded qualified family members the right to renewal leases.
Given the vicissitude of the law controlling in this case and the concomitant appearance, disappearance and reappearance of the Bulletin’s provisions during the brief pendency of this motion, the question as to which law should apply in resolving the motion must now be considered. Under general principles of statutory construction, newly enacted laws are operative prospectively only. (Fruhling v Amalgamated Hous. Corp., 9 *876 NY2d 541 [1961]; Matter of Ayman v Teachers’ Retirement Bd., 9 NY2d 119 [1961].) Under this principle, the new code effective May 1, 1987, should not be controlling on a motion pending since March 1987 in a proceeding initiated in October 1986. Decisional law, however, unlike enacted law, is, by ancient common-law tradition, immediately applicable to pending matters. Thus, Two Assocs. (supra) would require the Sullivan ruling to control here. However, numerous precedents have carved out an exception to the general rule of prospective application. Courts have repeatedly upheld retrospective application of remedial legislation designed to protect tenants’ rights. (Megalopolis Prop. Assn. v Buvron, 110 AD2d 232; Gordon & Gordon v Madavin, 108 Misc 2d 349 [App Term, 1st Dept 1981]; I. L. F. Y. Co. v Temporary State Hous. Rent Commn., 10 NY2d 263, appeal dismissed 369 US 795; 420 E. 80th Co. v Chin, 97 AD2d 390 [1st Dept 1983].)
That section 2523.5 of the new code is remedial in purpose is beyond question, given the history that preceded its promulgation. The Sullivan ruling exposed thousands of people to summary eviction with little or no hope of finding affordable housing in this city. To blunt Sullivan’s effect, DHCR wove a temporary safety net in the Rent Stabilization Code by issuing the interim Bulletin pending the appearance of the new code. Although Two Assocs. (supra) declared the Bulletin invalid as overstepping the limited bounds of an emergency measure, its protective provisions are embodied in the new code. Thus, the public policy in averting evictions under the circumstances presented in this case is clear. It aims to cure precisely the injury now before the court. Since the proceeding remains pending and decedent’s daughter is still in possession, the law should be liberally construed to accomplish its evident purpose: the halting of summary evictions of qualified family members who have resided for the specified period of time with the deceased tenant of record in a rent-stabilized housing accommodation.
Even were I to decide the motion under the rule of Sullivan (supra), the ultimate result would in all likely events be the same — merely postponed — because respondent would appeal, rightly anticipating that the Appellate Term would be governed by section 2523.5 of the new code in accordance with the general policy of appellate courts to apply on review the law most recently enacted. As stated by Justice Marshall in United States v Schooner Peggy (1 Cranch [5 US] 103, 110): "It is in the general true that the province of an appellate court *877 is only to inquire whether a judgment when rendered was erroneous or not. But if, subsequent to the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied * * * In such a case the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of the law, the judgment must be set aside.” (See also, Matter of Boardwalk & Seashore Corp. v Murdock, 286 NY 494 [1941]; Matter of Tartaglia v McLaughlin, 297 NY 419 [1948]; I. L. F. Y Co. v Temporary State Hous. Rent Commn., 10 NY2d 263 [1961], supra.) Thus, a decision reached under Sullivan in the court of first instance would likely be reversed on appeal. The protracted outcome, but at a cost of time and a depletion of judicial resources, would be the same as if I had instead made my determination under the new code. Thus, both public policy and judicial economy dictate a retrospective application of section 2523.5.
It should be further noted that the Commissioner of DHCR has now filed with the Appellate Division, First Department, a motion for leave to reargue Two Assocs. v Brown (supra) or for leave to appeal to the Court of Appeals. The result of this challenge is to stay the court’s ruling in Two Assocs. Pending a determination by the Appellate Division or the Court of Appeals, the Bulletin, although superseded by the code and therefore moot, remains, technically at best, in effect. Therefore, it would not be violative of the law to decide the instant motion under the provisions of the Bulletin since it was the controlling law when this motion was submitted. Since the protection afforded under the Bulletin and the code are identical, a decision reached under either one or the other will yield the same result. The better view, however, is to be governed by the code, given the tenuousness of the Bulletin. Bottomed on firmer legislative ground, the decision will be judicially sounder and will provide to the parties herein a less transient and less vulnerable basis for the adjudication they seek.
I turn now to the new Rent Stabilization Code. Section 2523.5 (a) entitled "Notice for renewal of lease and renewal procedure” sets for the procedural requirements: the form prescribed, the notification period and the manner in which an offer to renew the lease is to be accomplished by the landlord.
Section 2523.5 (b), relevant here, states in pertinent part
*878 "(b) (1) * * * If an offer is made to the tenant pursuant to the provisions of subdivision (a) and such tenant has vacated the housing accommodation, any member of such tenant’s family, as defined in subdivision (o) of section 2520.6 of this Title, who has resided in the housing accommodation as a primary resident from the inception of the tenancy or commencement of the relationship shall be entitled to be named as a party to the renewal lease.
"Provided that the tenant’s family member has resided in the housing accommodation as a primary resident from the inception of the tenancy or the commencement of the relationship, the residency requirements set forth in this paragraph (1) shall not be deemed to be interrupted by any period during which such family member temporarily relocates from such housing accommodation because he or she:
"(i) is engaged in active military duty;
"(ii) is enrolled as a full time student;
"(iii) is not in residence at the housing accommodation pursuant to a court order not involving any term or provision of the lease, and not involving any grounds specified in the Real Property Actions and Proceedings Law;
"(iv) is engaged in employment requiring temporary relocation from the housing accommodation;
"(v) is hospitalized for medical treatment; or "(vi) for such other reasonable grounds that shall be determined by the DHCR upon application by the family member.
"(2) In addition to the provisions of paragraph (1) of this subdivision (b), if the tenant is deceased at the expiration of the lease term, such tenant’s family member who has not resided in the housing accommodation since the inception of the tenancy or the commencement of the relationship, but who has been residing with such tenant in the housing accommodation as a primary resident for a period of no less than two (2) years immediately prior to the death of the tenant * * * such family member shall be entitled to a renewal lease. The minimum periods of required residency set forth in this paragraph (2) shall not be deemed to be interrupted where a family member is hospitalized for medical treatment during such minimum period.”
As is readily seen, section 2523.5 (b) (1) sets out the bases for entitlement to a lease renewal where the tenant has vacated. Entitlement rests on the fulfillment of three essential requirements:
*879 1) one must be a member of the tenant’s family
2) residency must date from either
a) the inception of the tenant’s tenancy, or
b) the commencement of the family relationship with the tenant
3) the residence must be the primary residence of the family member.
If these three requirements are met, primary residence status will not be nullified by a temporary relocation for the reasons enumerated in (i) through (vi).
Section 2523.5 (b) (2) sets out the basis for entitlement to a lease renewal where the tenant is deceased. The family member is entitled to a renewal lease if he or she meets the requirements set out in (b) (1). In addition, the section sets forth a more lenient residency basis of at least two years with the tenant prior to the tenant’s death, but here only hospitalization will excuse an interruption in the required period of residency.
Turning now to the facts of the case, the petition indicates that decedent’s tenancy began in October 1972. Decedent’s daughter Elisa, then a child, lived with her mother from the time of the inception of the tenancy. If I take Elisa’s version, unrefuted by petitioner, her parents’ tenancy began in January 1963, before her birth in November of that year. Under this view, Elisa has been living with her parents and then her mother in the apartment since the commencement of the family relationship. Under either view, Elisa meets the second requirement. That she falls within the definition of a family member as defined in section 2520.6 (o) of the code is not disputed by the parties. The first and second requirements are therefore met.
Petitioner contends, however, that the subject apartment is not Elisa’s primary residence. The challenge is based on her "own admission” and derives "from her own papers.” But what Elisa admits to is that she has lived away from home to attend college and law school. A temporary relocation for such a purpose under section 2523.5 (b) (1) (ii) does not interrupt the required residency requirement. Nevertheless, the papers indicate that a factual controversy has been raised. The issue of primary residence being irrelevant to a determination under Sullivan (supra), petitioner should not be precluded from raising it at trial, under the code. Where there are triable issues of fact, summary judgment will not be granted.
*880 In accordance with the foregoing, respondent’s motion to dismiss pursuant to CPLR 3211 (a) (10) is denied; petitioner’s motion to amend the caption of the proceeding to set forth Elisa Davidson as a party respondent is granted; petitioner’s motion for summary judgment is denied.
The matter is to be set down on the Part 18 Calendar at 9:30 on June 26, 1987 and is to be referred to me for a hearing on the issue of primary residence.