OPINION OF THE COURT
Bruce McM. Wright, J.
Plaintiff, a resident of apartment 14 at 411 West 45th St., New York, New York, here moves for an order preliminarily enjoining defendants from removing plaintiff from possession of the apartment. In this action, plaintiff seeks a declaratory judgment that he is the primary tenant of the apartment and that he is entitled to a rent-stabilized lease for apartment 14.
Defendant Lewpa Equities Corp. is the owner and defendant Next West Management, Inc. is the managing agent of the building. In October 1986, defendant Lewpa Equities Corp. served plaintiff with a "10 Day Notice to Licensee to Quit Premises Upon Revocation of License.”
*633 In support of this motion for injunctive relief, plaintiff proffers two arguments to support his contention that he is entitled to a rent-stabilized lease. First, plaintiff argues that he is an assignee of a rent-stabilized lease. In the alternative, plaintiff urges that as the "gay life partner” of the named tenant (who is now deceased), he must be deemed to be a "family member” of the tenant, and that as such a "family member”, the landlord must offer plaintiff a lease.
According to plaintiff, in April 1983, the lessee of the apartment at the time, Jeffrey Avick, assigned the lease to Gregory Doxey and plaintiff. Plaintiff relies on a copy of a written assignment of lease dated April 29, 1983 and signed by Jeffrey Avick, Gregory Doxey and Edward Collins. That assignment provides that Jeffrey Avick assigns his lease to Gregory Doxey and Edward Collins, for the period May 1, 1983 to April 30, 1986.
In opposition to this motion defendants stress that they never consented to an assignment of the Avick lease to Mr. Collins. Defendants stress that the assignment document does not contain the signature of the landlord or his agent, and that there is no indication in that agreement that the landlord consented to an assignment to both Gregory Doxey and Edward Collins. Instead, defendants maintain that they only consented to an assignment to Gregory Doxey, and defendants have supplied documentation, not submitted by plaintiff, that supports this position.
For example, by letter dated April 5, 1983, Jeffrey Avick wrote to Next West Management, stating that he wanted to assign his lease to Mr. Greg Doxey, and that Mr. Doxey had already submitted the application to Next West Management. No mention is made of Edward Collins. The copy of the application, annexed to defendants’ papers, contains information only as to Gregory Doxey and is signed by only Gregory Doxey. By letter dated June 13, 1983, Next West Management wrote to Mr. Doxey, stating that it had consented to his occupancy as a sublessee of Jeffrey Avick. That letter was acknowledged by Mr. Doxey when he signed it and returned it to Next West Management, Inc. There is no mention of Edward Collins in that letter.
The only documentation that mentions Edward Collins in terms of an assignment of the Avick lease is a May 11, 1983 letter written by Mr. Doxey and addressed to Next West Management. That letter was sent in conjunction with the *634 application that was submitted by Mr. Doxey. The letter states, inter alia: "[Attached please find xerox copies of (1) the Lease between Lewpa Equities and Jeffrey Avick; (2) assignment of the lease from Jeffrey Avick to myself and Edward Collins”.
However, as noted, only Mr. Doxey filled out the application, which included information about his employment history and references; Mr. Collins neither submitted any such information to Next West Management, nor signed the application.
Further, defendants assert that when they agreed to grant a prime lease to Gregory Doxey for the term. March 1, 1986 to February 28, 1987, a lease was forwarded to Mr. Doxey with only his name appearing as the tenant. According to plaintiff, "[bjecause we thought the lease contained a typographical error in that it did not include my name, Mr. Doxey and I inserted my name on the lease and then we both executed the aforesaid lease as primary tenants.” However, as is pointed out by defendants, the managing agent crossed out the name of Ed Collins, as well as the signature of Mr. Collins, and wrote the following notation on the signature page of the lease: "Gregory Doxey is the sole tenant of record.” In that regard, the management coordinator, Carole Fiedler, sent a letter dated March 11, 1986 to Mr. Doxey, which stated as follows:
"Dear Greg:
"I have received your signed lease and additional correspondence with regard to Jeffrey Avick’s assignment of his prime lease to you and your subsequent agreement to grant you a prime lease.
"In none of your correspondence — whether written or implied — was your having a roommate ever mentioned. As we have discussed the matter of Next West granting you a prime lease quite openly, I find it incredibly presumptuous of you to take it upon yourself to add a name to the lease we provided you with.
"Our lease agreement is solely with you. We have not, and do not intend to grant you permission to have another name on the lease.
"Further you stated that the name of Edward C. Collins appears on former correspondence. This is not true.
"I reiterate that you are the sole legal occupant of apart *635 ment # 14. Mr. Collins or any one else has no tenant rights whatsoever.”
Real Property Law § 226-b clearly provides that a tenant may not assign his lease without the written consent of the landlord (unless a greater right to assign is conferred by the lease). Here, there is no evidence that defendants ever gave their written consent to an assignment of the lease to Mr. Collins. Therefore, plaintiff has not demonstrated a likelihood that he will prevail on the merits of his claim that he is an assignee of the Avick lease.
Plaintiff also argues that he is entitled to a lease in his name because he was the life partner of Mr. Doxey (as noted, Mr. Doxey became the prime lessee of the apartment by virtue of a lease entered into on Feb. 21, 1986). Plaintiff avers that he and Mr. Doxey lived together before they moved into the apartment in dispute here, and that they provided each other with the love and support that is part of a "spousal relationship.” Plaintiff states that Mr. Doxey died of AIDS in June of 1986, and that he cared for Mr. Doxey until the latter’s death. Thus, plaintiff argues, as the "surviving gay life partner” of Mr. Doxey, he is entitled to a rent-stabilized lease on the ground that he is a family member of the deceased tenant of record.
Neither the Court of Appeals decision in Sullivan v Brevard Assocs. (66 NY2d 489), nor the recently promulgated Rent Stabilization Code (9 NYCRR 2520.1 et seq.) lends support to plaintiff’s contention that he is entitled to a renewal or vacancy lease under the Rent Stabilization Law.
In Sullivan v Brevard Assocs. (supra), the Court of Appeals strictly construed the Rent Stabilization Law when it held that under the law, "a landlord need offer a renewal lease only to a tenant of record, and is not obligated to offer a renewal lease to a relative of the tenant who occupies the apartment with the tenant during a portion of the lease term.” (66 NY2d 489, 490-491.) In that case, the sister of the named tenant had moved into the apartment before the lease was signed, had remained there after the tenant had vacated, and had paid the rent with her own checks. Under the Rent Stabilization Law, wrote the court, "a renewal lease must be offered to a 'tenant’ (Administrative Code of City of New York § YY51-6.0 [c] [4]).” (66 NY2d 489, 492.)
"Indeed, there is conspicuously absent from the Rent Stabilization Law any definition of the term 'tenant,’ leaving only *636 the lease definition of tenant. (Compare, Cooper v 140 E. Assoc., 27 NY2d 115, with Burns v 500 E. 83rd St. Corp, 59 NY2d 784, 786, where, in other contexts, we have given significance to the failure of the Rent Stabilization Law to adopt the rent-control definition of 'tenant’.) Additionally, the Rent Stabilization Law does not contain any provision similar to rent control regulation section 56 (4) limiting the circumstances under which occupants may be evicted following the death of the tenant of record. Again, the fact that such a provision has been omitted from the Rent Stabilization Law cannot be overlooked, especially since it has been included, where intended, in other regulations (see, Rent and Eviction Regulations of Division of Housing and Community Renewal, 9 NYCRR 2104.6 [d])” (66 NY2d 489, 493-494, supra).
Subsequent to the decision in Sullivan (supra), and apparently in response thereto, the New York State Division of Housing and Community Renewal (DHCR) issued Emergency Operational Bulletin No. 85-1. As described by the First Department in Two Assocs. v Brown (127 AD2d 173, 177-178): "This emergency bulletin requires a landlord to offer a renewal lease to a rent-stabilized tenant and his or her immediate family, defined as 'husband, wife, son, daughter, stepson, stepdaughter, father, mother’. The bulletin also set forth, for the first time, a requirement that a landlord of rent-stabilized premises must offer 'the right to first refusal of a new lease’, at the maximum legal rent allowed, to a 'non-immediate family member’ who has 'continuously resided in the dwelling unit as a primary resident since * * * the beginning of the relationship.’ 'Non-immediate family member’ is defined as 'a brother, sister, nephew, niece, uncle, aunt, grandfather, grandmother, grandson, granddaughter, father-in-law, mother-in-law, son-in-law, daugther-in-law’.”
However, the First Department held in Two Assocs. v Brown (supra) that the operational bulletin had not been validly promulgated and reversed the lower court’s determination (Helen E. Freedman, J.) which applied that bulletin to the case before it. In her decision, Judge Freedman held that defendant, resident of a rent-stabilized apartment, but not a signatory to the lease, was entitled to a vacancy lease by virtue of his status as a "gay life partner” of the named tenant. This determination was based upon the conclusion that a "gay life partner” must be considered a "family member” as that term is used in the operational bulletin.
Upon reversing the lower court’s decision on the ground *637 that the bulletin had not been validly promulgated, the Appellate Division did not address the issue of whether defendant Brown, as a "gay life partner” would have been considered a "family member” had the operational bulletin been properly issued by the DHCR.
While this motion was pending, a new Rent Stabilization Code, effective May 1, 1987, was issued by the DHCR. The new Code contains much of the same language that was included in the operational bulletin. Section 2523.5 of the new Code (9 NYCRR), entitled "Notice for renewal of lease and renewal procedure”, provides that a tenant’s "family member” has the right to a renewal or vacancy lease where the tenant has vacated the apartment or has died, provided that the family member meets certain residency requirements. The term "family member” is defined as follows: "A husband, wife, son, daughter, stepson, stepdaughter, father, mother, stepfather, stepmother, brother, sister, nephew, niece, uncle, aunt, grandfather, grandmother, grandson, granddaughter, father-in-law, mother-in-law, son-in-law, or daughter-in-law of the tenant or permanent tenant.” (Rent Stabilization Code [9 NYCRR] § 2520.6 [o].)
Neither a "gay life partner” nor, for that matter, a "heterosexual life partner” is included in that definition, although the issue of their inclusion must have been considered by the DHCR, in view of the case law that existed prior to the enactment of the new Code.
Although plaintiff argues that the term "family member” as defined and included in the operational bulletin (and subsequently in the new Code) must be deemed to include a "gay life partner”, the court notes that there are certain categories of family members that have also been excluded from the definition (e.g., cousin, sister-in-law, brother-in-law). Upon interpreting a statute, "[t]he maxim expressio unius est exclusio alterius is applied in the construction of the statutes, so that where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 240; see also, Eaton v New York City Conciliation & Appeals Bd., 56 NY2d 340, 345, on remand 121 Misc 2d 336; Patrolmen’s Benevolent Assn. v City of New York, 41 NY2d 205, 209.)
And, given the Court of Appeals stated intention to strictly *638 construe the Rent Stabilization Law and Code’s language, visá-vis a resident’s right to a renewal lease, this court declines to extend the definition of "family member” set forth in the recently promulgated Rent Stabilization Code to include "gay life partner.” Such an extension would be an exercise in judicial legislation, an act which is to be avoided (McKinney’s Cons Laws of NY, Book 1, Statutes § 73).
Based upon the foregoing, plaintiff has not demonstrated a likelihood of success on the merits of his action, and, thus, is not entitled to preliminary injunctive relief (Grant Co. v Srogi, 52 NY2d 496). Accordingly, the motion for injunctive relief is denied. The temporary restraining order contained in the order to show cause is vacated upon service on plaintiff of a copy of this order with notice of entry.