Parness, J.
(dissenting). I respectfully dissent to the extent that I would modify the order entered November 4, 1985 (Martin Schoenfeld, J.) by reversing so much thereof as denied in its entirety respondent Anthony J. Ewell’s cross motion for summary judgment, and, as so modified, I would affirm the order appealed from, with $10 costs to the respondent; petitioner East Four-Forty Associates’ motion for summary judgment and respondent’s cross motion for summary judgment should be disposed of as follows: petitioner’s cause of action for possession should be denied and the petition dismissed; respondent’s counterclaim for compensatory and punitive damages and attorney’s fees should be denied and dismissed for reasons stated by the majority; final judgment of possession should be awarded in favor of the respondent.
I would sustain the validity of the succession provisions of the new Rent Stabilization Code (9 NYCRR) § 2523.5 (b) (1) and (2). My colleagues suggest that the Court of Appeals, in Sullivan v Brevard Assocs. (66 NY2d 489), essentially speaks to the issue now before us, and, that the Sullivan court, in holding that no succession rights exist under the city Rent Stabilization Law, precludes any amendment of the Rent Stabilization Code to provide for succession rights (where none previously existed) in rent-stabilized housing accommodations. The Sullivan case, at least according to my colleagues, reconciles what they acknowledge might otherwise be viewed as the anomaly of the existence of succession rights in rent-controlled accommodations (see, Administrative Code of City of New York § 26-403 [m], formerly § Y51-3.0 [m]; New York City Rent and Eviction Regulations [9 NYCRR] § 2204.6 [d], formerly § 56 [d]; New York State Rent and Eviction Regulations [9 NYCRR] § 2104.6 [d], formerly § 56 [4]; Matter of Herzog v Joy, 74 AD2d 372, affd 53 NY2d 821) and the absence of comparable rights in rent-stabilized accommodations. The analysis of the majority is flawed.
Rent-control succession rights do not arise from any express provision of the city Rent Control Law. Nowhere in the city Rent Control Law is it provided that family members or any other person in residence with the rent-controlled tenant of record may under certain circumstances succeed to the rent-control tenancy of the tenant of record. Rather, close reading of Sullivan v Brevard Assocs. (supra) and Matter of Herzog v Joy (supra) indicates that rent-control succession rights are at best little more than an "amalgam” of the definition of the term "tenant” in the Rent Control Law (see, Administrative *250 Code § 26-403 [m], formerly § Y51-3.0 [m], which defines the term "tenant” as "tenant, subtenant, lessee, sublessee, or other person entitled to the possession or to the use or occupancy of any housing accommodation”) with New York City Rent and Eviction Regulations (9 NYCRR) § 2204.6 (d), formerly § 56 (d) (see also, New York State Rent and Eviction Regulations [9 NYCRR] § 2104.6 [d], formerly § 56 [4]), which provides that no occupant may be evicted "where the occupant is either the surviving spouse of the deceased tenant [of record] or some other member of the deceased tenant’s family who has been living with the tenant”.
The essence of the Court of Appeals holding in Sullivan (66 NY2d 489, 493, supra) is that "Neither the rent-control definition of 'tenant’ nor its provision* limiting eviction of occupants upon the death of the tenant — the premises of Matter of Herzog v Joy — is found in the Rent Stabilization Law, and * * * in both instances these omissions from the law were deliberate”. As the Sullivan court itself, however, notes the provisions limiting the circumstances under which occupants may be evicted following the death of a rent-controlled tenant of record were not in the Rent Control Law, but were in the Rent and Eviction Regulations. At the time the Sullivan case was decided by the Court of Appeals (Nov. 19, 1985), provisions analogous to the succession provision of the New York City and New York State Rent and Eviction Regulations ([9 NYCRR] § 2204.6 [d], formerly § 56 [d]; [9 NYCRR] § 2104.6 [d], formerly § 56 [4]) did not exist in either the Rent Stabilization Law or in the Code of the Rent Stabilization Association of New York City, Inc. However, the promulgation of the new Rent Stabilization Code by the New York State Division of Housing and Community Renewal (DHCR), effective May 1, 1987, introduced into the code for the first time succession provisions here at issue (Rent Stabilization Code [9 NYCRR] § 2523.5 [b] [1], [2]), which are analogous to the succession provisions of New York City Rent and Eviction Regulations (9 NYCRR) § 2204.6 (d), formerly § 56 (d) and New York State Rent and Eviction Regulations (9 NYCRR) § 2104.6 (d), formerly § 56 (4). As the succession provision of the Rent and Eviction Regulations served as a principal predicate for family member entitlement to succession under the Rent Control Law, so too should the newly promulgated section 2523.5 (b) *251 (1) and (2) of the new Rent Stabilization Code (9 NYCRR) serve as the predicate for family member entitlement to succession under the Rent Stabilization Law.
The Sullivan court’s attention to the absence in the Rent Stabilization Code of an analogue to the succession provision of the Rent and Eviction Regulations may be viewed as an invitation to amend the Rent Stabilization Code to include a counterpart to the succession provisions of the Rent and Eviction Regulations. With the promulgation of section 2523.5 (b) (1) and (2) of the new Rent Stabilization Code (9 NYCRR), the DHCR may be said to have accepted that invitation. Inasmuch as the absence of a succession provision in the Rent Stabilization Code served in part as grounds for the Sullivan court’s conclusion that there were no succession rights under the Rent Stabilization Law, the newly promulgated succession provisions of the Rent Stabilization Code now confer succession rights under the Rent Stabilization Law.
The existence of succession rights in rent-controlled apartments and the absence of succession rights in rent-stabilized apartments should not turn on the fact that the Rent Control Law contains a section devoted to definitions in which is found a definition of the term "tenant” (Administrative Code § 26-403 [m], formerly § Y51-3.0 [m]), while the Rent Stabilization Law contains no section of definitions and no definition of the term "tenant”. Indeed, the court in Sullivan (supra) does not so hold, but merely concludes that the absence of a definition of the term "tenant” in the Rent Stabilization Law coupled with the absence of any succession provision in the Rent Stabilization Code manifests the Legislature’s lack of support for succession rights to rent-stabilized tenancies.
The mere absence of a definition of the term "tenant” in the Rent Stabilization Law and the corresponding need to utilize the lease definition of the term "tenant” for the purpose of enforcing the Rent Stabilization Law should not be construed as depriving the DHCR of authority to amend the Rent Stabilization Code to include succession rights, particularly since the recognition of such authority in the DHCR is wholly consistent with the stated goals of the Rent Stabilization Law (Administrative Code § 26-511 [c] [1]) and in harmony with precedent abounding under the Rent Control Law. Indeed, Two Assocs. v Brown (127 AD2d 173, rearg denied App Div, 1st Dept, lv denied 70 NY2d 792) anticipates just such an amendment of the code as the proper predicate for creating valid and enforceable rent-stabilization succession rights, when it *252 states that "[t]he Commissioner [DHCR] may not so act [to create succession rights to rent-stabilized apartments] in the absence of a legislative amendment of the Law or without properly moving to amend the Code as specified in the Law” (at 183; emphasis added). Contrary to the majority’s view, there is no reason to read "or” in this quotation from Two Assocs. in the conjunctive.
Moreover, the anomaly of recognizing succession rights under the Rent Control Law and not recognizing them under the Rent Stabilization Law is highlighted by the fact that rent-control succession rights are in material respects more economically onerous for owners than comparable rights under rent stabilization. Rent-control succession rights pose the prospect of perpetuating for years and even decades a rental scheme, which, as the Court of Appeals in Sullivan (66 NY2d 489, 494, supra) observed, "subjects an ever-decreasing number of rental units to stringent controls”, and correspondingly precludes the transformation, under vacancy decontrol (Administrative Code § 26-403 [i] [9]), of those rent-controlled apartments in which succession rights are recognized, into rent-stabilized units, at new rentals. Succession rights under rent stabilization have no such extreme consequence for whether resident family members are evicted from a housing accommodation because of the absence of such succession rights or remain in occupancy because of protection afforded by such succession rights, the premises in either event remains subject to rent stabilization. What a landlord stands to lose by virtue of the formulation of rent-stabilized succession rights, at least as to an apartment remaining on the rental market, is merely the opportunity to rent the apartment to a stranger to the premises and the possibility of collecting a limited vacancy increase. If, however, a landlord upon the eviction of resident family members intends to withhold the apartment from the rental market, perhaps in contemplation of future profits from a cooperative conversion, the end result of not recognizing succession rights would be underutilization of the premises and further diminution of New York City’s rental housing stock at a time of great shortage in this city of rent-stabilized rental housing. In this context it is particularly inappropriate to preclude family members in permanent residence with a rent-stabilized tenant of record from entitlement to succeed to the tenancy of the departing or deceased rent-stabilized tenant of record.
The Sullivan court does suggest that the initial absence of *253 succession rights under the Rent Stabilization Law was intentionally designed to render rent stabilization to that extent less burdensome than rent control. According to Sullivan (supra), this less onerous aspect of rent stabilization was deemed a means of promoting apartment construction, thereby helping to alleviate New York City’s housing shortage. However, the absence of rent-stabilized succession provisions can hardly be said to create a material incentive to embark upon the construction of rental housing in this city because, as noted above, vacated rent-stabilized apartments remain subject to rent stabilization and vacancy increases are largely circumscribed. Finally, the reality of the matter is that there has been a conspicuous paucity of construction of rent housing in this city for almost two decades, and it is unrealistic to suggest that the absence of rent-stabilization succession rights has served to materially encourage such construction.
Nor am I in agreement with the majority that the Rent Stabilization Law (Administrative Code) § 26-511 (b), insofar as it provides "No provision of [the Rent Stabilization Code] shall impair or diminish any right or remedy granted to any party by this law or any other provision of law” represents a significant limitation of the DHCR’s authority to amend the Rent Stabilization Code. The quoted provision of section 26-511 (b) merely represents an admonition that the code in any event shall not be inconsistent with the Rent Stabilization Law or any other law. To construe the quoted provision as does the majority would render the DHCR largely ineffectual in regard to promulgating even the most rudimentary amendments to the code.
The broad mandate extended to the DHCR to adopt a code which "provides safeguards against unreasonably high rent increases and, in general, protects tenants and the public interest” (Administrative Code § 26-511 [c] [1]) remains in full force and effect and the succession provisions of the new code represent the fulfillment of that mandate. It simply could not have been the intent of the Legislature that in the midst of an acknowledged housing emergency family members (including widows, widowers often elderly and infirm, and children) who are not themselves tenants of record, but are permanently in residence with a family member/rent-stabilized tenant of record, are under all circumstances and in spite of amendment of the Rent Stabilization Code to provide for succession rights, subject to being uprooted from their homes upon the death or departure of the family member/rent-stabilized ten *254 ant of record. The majority in reaching a contrary conclusion largely ignores the potential for dislocation and havoc inherent in striking down the succession provisions of the new Rent Stabilization Code (9 NYCRR) § 2523.5 (b) (1) and (2). The observation of the majority that in future the Legislature may address hardships caused by the invalidation of the code succession provisions hardly serves to alleviate the substantial jeopardy that family members in residence with rent-stabilized tenants of record now face.
Boreali v Axelrod (71 NY2d 1 [Nov. 25, 1987]), cited by the majority, does not suggest otherwise. The new code’s succession provisions do not represent, as did the regulations in Boreali, a regulatory scheme laden with exceptions based solely upon economic and social concerns, but a formulation consistent with law and precedent (cf., Matter of Herzog v Joy, 74 AD2d 372, affd 53 NY2d 821, supra; Real Property Law § 235-f). The DHCR essentially completed the rent-stabilization scheme in a manner consistent with its mandate from the Legislature. Unlike the circumstances in Boreali there is no indication that the Legislature repeatedly tried — and failed— to reach agreement on the issue of succession rights for rent stabilization (indeed prior to Sullivan v Brevard Assocs., supra, it had widely been assumed that such succession rights existed from inception of the Rent Stabilization Law [cf., Concord Props. v Conciliation & Appeals Bd., Sup Ct, NY County, index No. 3828/82; 310 Assocs. v Conciliation & Appeals Bd., Sup Ct, NY County, index No. 20484/80]). Certainly, the DHCR possesses the expertise and technical competence necessary to draft regulations required to achieve the goals of the Rent Stabilization Law, and the succession provisions of the new Rent Stabilization Code are just such regulations. Thus, the succession provisions of the new code do not represent a breach of the separation of powers doctrine, but constitute an appropriate exercise by the DHCR of authority delegated to it by the Legislature to amend the code in a manner calculated to insure the public interest, avoid excessive rent and increases and protect tenants (cf., Chiropractic Assn. v Hilleboe, 12 NY2d 109; Boreali v Axelrod, supra [Bellacosa, J., dissenting]).
The Court of Appeals, in Matter of Consolidated Edison Co. v Department of Envtl. Conservation (71 NY2d 186, 191 [Jan. 7, 1988]) in recently addressing the relationship between legislative and administrative authority, stated: "An administrative agency possesses all the powers expressly delegated to *255 it by the Legislature and such a delegation of authority will be upheld so long as the Legislature has 'limit[ed] the field in which that discretion is to operate and provides standards to govern its exercise’ (Matter of Levine v Whalen, 39 NY2d 510, 515; accord, Matter of City of New York v State of New York Commn. on Cable Tel., 47 NY2d 89, 92; Matter of City of Utica v Water Pollution Control Bd., 5 NY2d 164, 168-169). However, it is not always necessary that the Legislature provide precise guidelines to an agency charged with carrying out the policies embodied in a legislative delegation of power. In certain technical areas, where flexibility is required to enable an administrative agency to adapt to changing conditions, it is sufficient if the Legislature confers broad power upon the agency to fulfill the policy goals embodied in the statute, leaving it up to the agency itself to promulgate the necessary regulatory details (Matter of City of Utica v Water Pollution Control Bd., supra, at 169). The Legislature need only furnish an agency standards or guides 'in so detailed a fashion as is reasonably practicable in the light of the complexities of the particular area to be regulated, since necessity fixes a point beyond which it is unreasonable and impracticable to compel the Legislature to prescribe detailed rules’ ” (Matter of Levine v Whalen, supra, at 515). The DHCR has acted within such a framework to formulate appropriate succession provisions in the new Rent Stabilization Code that are similar to the succession provisions previously formulated in the New York City and New York State Rent and Eviction Regulations applicable to rent control, and the succession provisions of the new code should be enforced retroactively to protect the respondent (cf., Gordon & Gordon v Madavin, Ltd., 108 Misc 2d 349 [App Term, 1st Dept], affd 85 AD2d 937; Rent Stabilization Code [9 NYCRR] § 2527.7).
Sandifer, J. P., and Ostrau, J., concur; Parness, J., dissents in a separate memorandum.

 Clearly referring to New York City Rent and Eviction Regulations (9 NYCRR) § 2204.6 (d), formerly § 56 (d).