Liggett v Lew Realty LLC (2024 NY Slip Op 03378)

Liggett v Lew Realty LLC

2024 NY Slip Op 03378 [42 NY3d 415]

June 20, 2024

Halligan, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, December 18, 2024

[*1]

K.E. Liggett, Appellant,
v
Lew Realty LLC, Respondent.

Argued May 15, 2024; decided June 20, 2024

Liggett v Lew Realty LLC, 211 AD3d 473, reversed.

{**42 NY3d at 417} OPINION OF THE COURT

Halligan, J.

It is well settled that an agreement waiving a benefit of the rent stabilization laws is void as against public policy. This rule is not altered by the tenant's status. Accordingly, the stipulation at issue here, which required the tenant to waive his right to file a fair market rent appeal (FMRA), is void and did not provide a path to deregulation of the subject apartment.
I.
Defendant Lew Realty owns and operates a Manhattan apartment building where plaintiff K.E. Liggett has resided{**42 NY3d at 418} since October 2020 pursuant to a market lease. Liggett commenced this action when Lew Realty attempted to raise her rent in 2021, seeking a declaration that the apartment is rent-stabilized and she is entitled to a rent-stabilized lease, overcharges, and attorneys' fees.
Liggett's claim is premised on events that occurred decades earlier. In 1984, an initial rent registration for the apartment was filed with the Division of Housing and Community Renewal (DHCR), identifying Edward Brown as the rent-controlled tenant of record. When Brown died in 1998—the sole recorded tenant of the apartment—he paid $141.23 in rent per month. Upon Brown's death, Edward McKinney claimed to be Brown's successor to the rent-controlled apartment under Braschi v Stahl Assoc. Co. (74 NY2d 201 [1989]). Lew Realty disputed McKinney's status and commenced a holdover proceeding to evict him.
[*2]McKinney and Lew Realty settled that proceeding in 2000 through a so-ordered stipulation (stipulation), which provided that McKinney would take tenancy as the first rent-stabilized tenant of the apartment rather than maintaining the apartment as rent-controlled. Rent control and rent stabilization are both statutory mechanisms intended to "put[ ] a brake upon run-away rent increases" in New York City, though they operate differently (8200 Realty Corp. v Lindsay, 27 NY2d 124, 136 [1970]; see also Braschi, 74 NY2d at 208). Rent control, which applies only to housing built before 1947, subjects rental units to "stringent controls," including strict limits on rent amounts and broad eviction protections (Sullivan v Brevard Assoc., 66 NY2d 489, 492-494 [1985]; 8200 Realty Corp., 27 NY2d at 129; Braschi, 74 NY2d at 209). Rent stabilization, by comparison, gives landlords more leeway to "increase rents within reasonable limits" (8200 Realty Corp., 27 NY2d at 136-137). When a rent-controlled unit becomes vacant, it is "automatically . . . subject to the less rigorous provisions of rent stabilization" (Braschi, 74 NY2d at 209, citing 9 NYCRR 2520.11 [a]; 2521.1 [a] [1]; see also Sullivan, 66 NY2d at 494 [rent control governs an "ever-decreasing number" of units]).
The stipulation between McKinney and the landlord provided that McKinney "agrees to accept and the landlord agrees to offer a rent stabilized lease" in McKinney's name at a rate of "$650 per month." It also stated that "$1,650 per month is a fair rent for [the] apartment being removed from Rent Control," a proviso apparently intended to set the initial legal regulated{**42 NY3d at 419} rent under the rent stabilization laws (RSL). The stipulation further provided that "[f]or as long as Ed McKinney is the tenant, his rent shall be $650 per month plus allowable rental increases." The effect of that provision, which neither party disputes, was to ensure that McKinney would pay a preferential rate of $650, with subsequent increases tied to this number for the duration of his tenancy. McKinney also agreed "not to challenge the rent," thereby waiving his right to challenge the amount of the initial rent through a fair market rent appeal proceeding. Lew Realty filed the lease with DHCR, registered $1,650 as the "legal regulated rent" and $650 as the "actual rent paid," and mailed McKinney notice of his right to file a FMRA as required by statute, notwithstanding that McKinney had already agreed not to avail himself of the process (see 9 NYCRR 2522.3 [a]).[FN1]
After McKinney vacated the apartment in 2001, Lew Realty renovated it. Lew Realty then took the $1,650 that McKinney had agreed to in the stipulation (but did not pay) as the initial legal regulated rent and applied increases tied to the vacancy and renovation, as authorized under the RSL. It calculated that with these increases, the legal rent would exceed $2,000, and determined that the apartment was thus subject to luxury decontrol. Lew Realty reported the apartment to DHCR as deregulated, and the next tenant took occupancy of the apartment at an open market rate of $1,650 per month. The apartment has been on the open market since.
In November 2021, Liggett brought a lawsuit alleging that the stipulation is void as against public policy, and that because the stipulation led in short order to the deregulation of the apartment, the deregulation was invalid and the apartment remains rent-stabilized. Lew Realty moved to dismiss, contending that the stipulation is enforceable and the deregulation proper. Supreme Court denied the motion, holding that the stipulation is unenforceable to the extent that it waives the protections of the rent laws.
The Appellate Division reversed and dismissed the complaint (211 AD3d 473 [1st Dept 2022]). Relying on Kent v Bedford Apts. Co. (237 AD2d 140 [1st Dept 1997]), the Court concluded that although an agreement by a tenant to waive the benefit of{**42 NY3d at 420} any provision of the rent control law is void, this protection did not apply to McKinney because he was not an established tenant when he signed the stipulation. The Appellate Division also concluded that because Liggett's claim implicates how rents are set, it is akin to an FMRA and therefore barred by the statute of limitations (see 9 NYCRR 2522.3 [c]). Two Justices dissented, concluding that the stipulation is void because it undermines the statutory process for setting initial regulated rents by ensuring McKinney would have no incentive to challenge the higher legal rent, and by requiring him to affirmatively waive his right to file an FMRA.
We now reverse.
II.
New York's Rent Stabilization Code provides a specific process for setting the initial rent of an apartment leaving rent control and entering rent stabilization. Under 9 NYCRR 2521.1 (a) (1), the initial regulated rent "shall be the rent agreed to by the owner and the tenant and reserved in a lease or provided for in a rental agreement subject to [*3]the provisions of this Code, and subject to a tenant's right to a Fair Market Rent Appeal to adjust such rent pursuant to section 2522.3 of this Title." The right to file an FMRA is held only by the first tenant of a rent-stabilized apartment, so long as that tenant received mailed notice of this right (see 9 NYCRR 2522.3 [a]).
The Code does not allow for waiver of its statutory protections. It expressly provides that "[a]n agreement by the tenant to waive the benefit of any provision of the RSL or this Code is void" (9 NYCRR 2520.13; see also 2200.15 ["An agreement by the tenant to waive the benefit of any provision of the Rent Law or these regulations is void"]).
The right to file an FMRA is one such "benefit . . . of the RSL." As with all of the RSL's protections, this right is meant "not to protect just a tenant, but to ensure the viability of the rent regulation system which protects tenancies in general, provides predictability to landlords, and significantly enhances the social, economic and demographic stability of New York City" (390 W. End Assoc. v Harel, 298 AD2d 11, 16 [1st Dept 2002]). The availability of an FMRA provides a crucial check on the initial rent for a rent-stabilized apartment. Because that amount serves as the baseline against which subsequent rent increases are calculated, it can affect the apartment's subsequent status and in turn, the overall stock of rent-stabilized apartments in New York City.{**42 NY3d at 421}
By securing McKinney's explicit agreement "not to challenge the rent," the stipulation waived his right to file an FMRA. That bargain circumvented the statutory process, and consequently the stipulation is void in its entirety as a matter of law (9 NYCRR 2520.13; see also Jazilek v Abart Holdings LLC, 10 NY3d 943, 944 [2008]; Riverside Syndicate, Inc. v Munroe, 10 NY3d 18, 22 [2008]). Because the stipulation is void, Lew Realty's registration statement based on the stipulation is as well, and therefore "neither party is entitled to rely on it" (id. at 24) and it cannot serve as the basis for deregulation. It remains to be determined whether the apartment was properly deregulated on some other ground.
In concluding otherwise, the Appellate Division majority relied on Kent v Bedford Apts. Co., which held that the RSL's prohibition of a waiver of rights did not apply to a plaintiff not yet established as a rent-stabilized tenant (237 AD2d at 140). Kent, however, is inconsistent with our subsequent case law. In Riverside Syndicate, we examined an agreement whereby tenants "waive[d] all right to challenge the legality of the rent" and agreed to pay more than the allowable amount, in exchange for impermissibly retaining a rent-stabilized apartment under circumstances barred by the RSL (10 NY3d at 21). We held the agreement was "on its face" a pact to " 'waive the benefit' of rent stabilization," and "therefore void" (id. at 22). Notably, the tenants in Riverside were not tenants of record, and their settlement, which was so-ordered by the court, resolved a holdover proceeding (id. at 23). We confirmed this point in Jazilek, overturning an Appellate Division decision that relied on Kent and holding that "[a]lthough tenant was not 'of-record' upon entering . . . the so-ordered stipulation violat[ing] the Rent Stabilization Code," nonetheless the agreement was "void as against public policy" (10 NY3d at 944; see also 390 W. End Assoc., 298 AD2d at 14 [enforcing settlements that contravene the RSL "would essentially allow any landlord to evade rent regulations by the mere expedient of a private agreement"]).
Kent is in direct tension with our holdings in Jazilek and Riverside, and we clarify that it is no longer authoritative. Contrary to Kent's conclusion, McKinney's status vis-à-vis the apartment has no bearing on whether the stipulation was void. Rather, the stipulation is void because it purports to waive a benefit of the rent laws. Accordingly, Kent provides no basis to dismiss Liggett's claims here. For the same reasons, the stipulation{**42 NY3d at 422} is not enforceable simply because it resolved a dispute between McKinney and Lew Realty and may have inured to McKinney's benefit (see e.g. Riverside, 10 NY3d at 21-22; Drucker v Mauro, 30 AD3d 37, 38 [1st Dept 2006] ["an agreement in purported or actual settlement of a landlord-tenant dispute which waives the benefit of a statutory protection is unenforceable as a matter of public policy, even if it benefits the tenant"]).[FN2]
Nor does the statute of limitations require dismissal of this action. Such a bar "does not make an agreement that was void at its inception valid by the mere passage of time" (Riverside, 10 NY3d at 24; see also Thornton v [*4]Baron, 5 NY3d 175, 181 [2005] [lease "(r)eflecting an attempt to circumvent the Rent Stabilization Law in violation of the public policy of New York . . . was void at its inception"]).
In sum, despite concerns about the substantial delay between the stipulation's execution and this litigation's commencement, no statute of limitations bars plaintiff's claim that the apartment is subject to rent stabilization. We hold that the Appellate Division erred in concluding otherwise and in deeming Liggett's complaint untimely. On remand, Lew Realty may rely on other reasons, apart from the stipulation, to establish that the apartment was not rent-stabilized when Liggett took tenancy, such as by establishing the fair rent of the apartment when it first entered rent stabilization in 2000 and applying subsequent allowable increases pursuant to the rent history (see e.g. 9 NYCRR 2522.4, 2522.8). We do not address any issue related to Liggett's rent overcharge claims, as those issues are not before us (see Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332, 351 n 4 [2020]).
Accordingly, the judgment appealed from and the Appellate Division order brought up for review should be reversed, with costs, and defendant's motion to dismiss the complaint denied.
Chief Judge Wilson and Judges Rivera, Garcia, Singas, Cannataro and Troutman concur.{**42 NY3d at 423}
Judgment appealed from and Appellate Division order brought up for review reversed, with costs, and defendant's motion to dismiss the complaint denied.

Footnotes

Footnote 1:Though Lew Realty filed the initial rent as required, there was no litigated proceeding before DHCR, and Lew Realty does not invoke collateral estoppel here (cf. Gersten v 56 7th Ave. LLC, 88 AD3d 189, 201 [1st Dept 2011]).

Footnote 2:While the Rent Stabilization Code authorizes a tenant to withdraw a complaint where there is "a negotiated settlement between the parties and with the approval of the DHCR, or a court of competent jurisdiction, or where a tenant is represented by counsel" (9 NYCRR 2520.13), McKinney did not file a complaint with DHCR.