Idehen v Stoute-Phillip (2025 NY Slip Op 51211(U))

[*1]

Idehen v Stoute-Phillip

2025 NY Slip Op 51211(U)

Decided on July 29, 2025

Civil Court Of The City Of New York, Queens County

Thermos, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 29, 2025
Civil Court of the City of New York, Queens County

Happiness Idehen and Felix Ogieva, Petitioner-Landlord

against
Gloria Stoute-Phillip, Respondent-Tenant "JOHN DOE" and "JANE DOE" Respondents-Undertenants.

Index No. LT-305376-23/QU

Appearing for the Petitioner
Innocent O. Chinweze, Esq., 
Ocean Rock Law Group PLLC
Appearing for the Respondent
Stephanie D. Ramdhari, Esq., 
The Legal Aid Society

Kimon C. Thermos, J.

Procedural History [FN1]

This a non-payment proceeding seeking possession of premises located at 183-18 140 Avenue, Apt. 18318, 2nd Floor, Springfield Gardens, NY 11413 (the "Subject Premises") and a money judgment in the amount of $44,793.48. 
On April 9, 2025, Respondent filed an OSC seeking: 1) dismissal of this proceeding pursuant to CPLR §3211(a) and CPLR §3211(a)(7); 2) leave to interpose an amended answer pursuant to CPLR §3025(b); and 3) staying this proceeding pursuant to CPLR §2201 pending the outcome of a Supreme Court case Respondent filed against Petitioners for violation of the New York City Human Rights Law. 
The case had been scheduled for trial on April 10, 2025. The Court calendared Respondent's OSC for the same date. On April 10, 2025, the parties appeared and discussed the [*2]OSC. Mr. Chinweze was directed to file written opposition to Respondent's OSC by April 21, 2025, and then the OSC would be marked submitted. The trial was marked off-calendar pending determination of the OSC. Mr. Chinweze filed a document to NYSCEF that he labeled as "Answer to Order to Show Cause." The Court deemed this as opposition to the OSC.
The Court issued a Decision/Order dated May 21, 2025: 1) dismissing the proceeding pursuant to CPLR §3211(a)(7) due to a defective rent demand; 2) denying Respondent's OSC to the extent of denying the requests to amend the answer or stay the proceeding as moot; 3) ordering Mr. Chinweze to show cause why he should not be sanctioned for filing opposition to Respondent's OSC that cited numerous cases that did not exist; and 4) setting the matter down for a hearing on June 2, 2025.
Mr. Chinweze's Written Filing
The morning of the hearing, Mr. Chinweze filed to NYSCEF a document labeled "Order to Show Cause Not to be Sanctioned." This is an extremely odd document. It is ninety-four pages long. It begins: "COMES NOW, Innocent O. Chinweze, Esq., attorney for Petitioner in the above captioned proceeding and respectfully moves this Court not to enter an order sanctioning attorney for unintentional citing of wrong and nonexistent legal authorities under 22 NYCRR Section 130-1.1 . . . " Next, the document contains paragraphs numbered 1-7 that briefly discuss the procedural history of the case and the standard for sanctions under 22 NYCRR Section §130-1.1 which were included in the Court's May 21, 2025 Decision/Order. 
Paragraphs 8-22 of the document are labeled "AFFIRMATION AND MITIGATING FACTORS." Mr. Chinweze initially states that he "had no knowledge or reason to believe that the citations contained in the Affirmation . . . .were inaccurate or fictitious." He acknowledges that he used "West Law supported by Google Co-Pilot [FN2]
which is an artificial intelligence-based tool as preliminary research aid." Mr. Chinweze goes on to state that he had no idea that such tools could fabricate cases but acknowledges that he later came to find out the limitation of such tools. 
He apologized for his failure to identify the errors in his affirmation, but partly blames "a serious health challenge since the beginning of this year which has proven very persistent which most of the time leaves me internally cold, and unable to maintain a steady body temperature which causes me to be dizzy and experience bouts of vertigo and confusion."
Mr. Chinweze then indicates that after finding about the "citation errors" in his affirmation, he conducted a review of his office computer system and found out that his system was "affected by malware and unauthorized remote access." He says that he compared the affirmation he prepared on April 9, 2025, to the affirmation he filed to NYSCEF on April 21, 2025, and "was shocked that the cases I cited were substantially different." Mr. Chinweze did not submit to the Court the original draft of his affirmation which he allegedly prepared on April 9, 2025. Instead, his June 2, 2025 filing has an "APPENDIX OF SECONDARY SOURCES REVIEWED UPON DISCOVERY OF THE ERROR IN THE APRIL 21, 2025 FILING." This Appendix goes from page 6 to page 94. At the hearing, Mr. Chinweze vaguely indicated that the Appendix represented what he meant to file. 
The Appendix begins on Page 6 with the heading "APPENDIX OF SECONDARY SOURCES REVIEWED UPON DISCOVERY OF THE ERROR IN THE APRIL 21, 2025 FILING". Section 1 of the Appendix is entitled "LaSalle Bank National Assoc. v. Nomura Aset (sic) capital Corp., 189 AD3d 576, 577, 1st Dept 2020 should be replaced by the decision in the Court of Appeal in Liggett v. Lew Realty." LaSalle [FN3]
was one of the seven fictitious cases cited in the April 21, 2025 Affirmation. LaSalle was cited for the proposition that "a tenant's refusal to sign a new lease agreement does not end the landlord-tenant relationship but instead results in a month-to-month tenancy under the same terms as the original lease." Liggett v. Lew Realty LLC, 42 NY3d 415 (2024) is an actual Court of Appeals decision. The text of the decision is included in the Appendix starting at the bottom of page 6 and ending on page 12. Most of page 6 contains a three-paragraph summary of the case. The Court initially thought that this summary was written by Mr. Chinweze, however the same three paragraph summary appears on the bottom of page 12 and continues onto page 13. After this summary is the full text of the Liggett decision. Immediately preceding this summary was the following: "Some Case metadata and case summaries were written with the help of AI, which can produce inaccuracies. You should read the full case before relying on it for legal research purposes." This strongly leads the Court to believe that the three paragraph summary preceding the decision was generated by AI. 
Perhaps more concerning is that Liggett does not remotely stand for the proposition that Mr. Chinweze attributed to the fictitious LaSalle case. Liggett addressed whether a stipulation that waived rights under the Rent Stabilization Code is void. Nothing in Liggett addressed the creation of a month-to-month tenancy upon a tenant's failure to sign a lease renewal.
Starting at the bottom of page 19 of the Appendix, Mr. Chinweze has included the full text of Pusatere v. City of Albany, 214 AD3d 91 (App. Div., 3rd Dept. 2023). Mr. Chinweze does not provide any explanation of why this decision is relevant to Respondent's motion to dismiss or whether this decision is being cited as a replacement of one of the fictitious cases cited in the April 21, 2025 Affirmation. Pusatere involved a group of landlords suing the city of Albany seeking to invalidate Local Law F which was passed by the Common Council of the City of Albany in 2021. The Pusatere decision assesses whether Local Law F, a forerunner of the Good Cause Eviction Law that was passed statewide in 2024, conflicted with state law. Nothing in the Pusatere decision remotely addresses the issues raised in Respondent's motion to dismiss.
Page 23 of the Appendix includes the first sentence that appears to have been drafted by Mr. Chinweze. It states: "This case enunciates the proposition that the termination of a lease creates a month to month tenant or tenant at will." The next ten pages contain the text of Harlorn LLC v. Poy Ao Cheng, 2018 NY Slip Op 50642(U)(Sup. Ct., NY Cty. 2018). The decision in Harlorn does not support the proposition cited by Mr. Chinweze. The court in Harlorn states: "Acceptance of rent checks from a tenant after a lease expires merely creates a month-to-month holdover tenancy." Id. at 11; citing Omanksy v. 160 Chambers St. Owners, Inc., 158 AD3d 460 (App. Div., 1st Dept. 2017). Mere termination of the lease does not create a month-to-month tenancy as asserted by Mr. Chinweze. Respondent must pay rent after expiration of the lease in order to create a month-to-month tenancy. See RPL §232-c. In this [*3]case, there was no evidence that Respondent ever paid rent to Petitioners or any of their predecessors after expiration of the last lease. Regardless, as noted in this Court's May 21, 2025 Decision/Order, the Appellate Term in Fairfield Beach 9th, LLC v. Shephard-Neely, 74 Misc 3d 14 (App. Term, 2nd Dept. 2021) determined that a month-to-month tenancy cannot be created upon expiration of a rent-stabilized lease.
The text of the Harlorn case ends on page 34 of the Appendix. Then there is a sentence which was included previously stating: "Some case metadata and case summaries were written with the help of AI, which can produce inaccuracies. You should read the full case before relying on it for research purposes." It is unclear what this statement is referring to as it immediately follows the text of an actual case. The following sentence states: "Appellate court case in support of the fact that the Landlord-Tenant relationship continues after the property is sold even if the tenant refuses to pay ren (sic) or sign a new lease agreement with the new owners." Harlorn was not an appellate case, so it would appear that this is referring to the next section of the Appendix.
Still on Page 34 we have a heading "3. Revis v. Schwartz" followed by the following statement: "In the case of Revis v. Schwartz, the New York Appellate Court held that the Landlord-Tenant rent- paying agreement continues after the property is sold, even if the tenant refuses to pay rent or sign a new lease agreement with the new owners." This is almost identical to the sentence before the heading. There are slight differences such as rent being spelled "ren" in the first iteration. However, far more concerning is that Revis v. Schwartz was a case where former National Football League player Darrelle Revis sued a company he hired to provide legal services for breach of fiduciary duty, breach of contract, and fraud. The issue before the Appellate Division, 2nd Department was whether the contract between the parties required that they arbitrate gateway questions of arbitrability. 192 AD3d 127 (App. Div., 2nd Dept. 2020). The next twenty-five pages of the appendix contains the full text of the decision which does not in any way, shape, or form address whether the landlord-tenant relationship continues after the property is sold or anything else remotely connected to the issues raised in Respondent's motion to dismiss. Also concerning is that immediately following the full text of the Revis decision on page 58 is another instance of the following statement: "Some case metadata and case summaries were written with the help of AI, which can produce inaccuracies. You should read the full case before relying on it for legal research purposes."
Starting on Page 58 of the Appendix, Mr. Chinweze includes the full text of Friedman v. Yosef, 2016 N.Y.Misc.LEXIS 384 (App. Term, 2nd Dept. 2016). Mr. Chinweze then states that this case replaces Bank of New York v. Hicks which was one of the fake cases cited in his opposition. He then stated: "Under RPAPL Section 711, the refusal to pay rent constitutes grounds for eviction and the Landlord may file for a Court order to remove the tenant from the property: The New York City Appellate Court has established that the refusal to pay rent constitutes grounds for eviction [FN4]
." However, Friedman does not remotely address the proposition cited. The Appellate Term in Friedman affirmed a trial court decision determining that the landlord was entitled to a possessory judgment pursuant to RSC §2524.4(a)(1) based on owner's use. The decision had nothing to do with refusal to pay rent.
Starting on Page 60 of the Appendix, Mr. Chinweze includes the full text of Vargas v. Sotelo, 2017 NY Slip Op 50417(U)(Civ. Ct., Bronx Cty. 2017). He indicates at the bottom of page 66 that Vargas is cited in replacement for the fake Deutsche Bank National Trust Co. v. Bianco and Olivieri v. Rosenthal cases cited by Mr. Chinweze in his opposition. Mr. Chinweze does not provide any discussion of why this case is relevant to the issues raised by Respondent's motion to dismiss. In his opposition, Mr. Chinweze cites Bianco for the proposition that "non-payment of rent can serve as grounds for initiating eviction proceedings." He cites Olivieri for the proposition that "a tenant's refusal to pay rent constitutes a breach of the landlord/tenant relationship, providing grounds for a landlord to initiate eviction proceedings." Vargas does not in any way stand for either of these propositions. Vargas involved whether a prime tenant had standing to bring a holdover case against an undertenant.
Page 67 of the Appendix inexplicably begins with the text of CPLR §5004 which provides that the rate of interest on a money judgment shall be nine percent. The text of the statute is highlighted, but no explanation is provided as why that would be relevant. The remainder of page 67 through page 70 of the Appendix is the full text of RPAPL §711. No analysis is provided as to what sections of the statute would have been relevant to opposing Respondent's motion to dismiss.
At the bottom of page 70, Mr. Chinweze provides the full text of the decision in 191 St. Assoc. LLC v. Cruz, 2016 NY Slip Op 50116(U)(App. Term, 1st Dept. 2016). Mr. Chinweze does not provide any analysis or discussion of this case or how it is relevant to the issues raised in Respondent's motion to dismiss. Cruz involves a non-payment case where the tenant initially failed to appear and the landlord obtained a default judgment. Respondent brought several OSCs seeking additional time to pay the arrears. On the tenant's ninth OSC, the parties entered into a stipulation which provided for a stay of execution of the warrant to pay the outstanding arrears with "time of the essence" and "no default . . . deemed de minimus" clauses. The parties agreed that the tenant did not comply with this agreement. Tenant filed a tenth OSC which was signed by the judge. The landlord appealed and the Appellate Term, 1st Department reversed indicating that the tenth OSC should not have been signed. Cruz, supra. There was no dispute in Cruz whether rent was owed or whether the rent demand was proper. The only dispute was whether the trial judge erred in signing a tenth OSC after the ninth OSC was settled with "time of the essence" and "no default . . . deemed de-minimus" clauses. The Cruz decision has absolutely no relevance to the issues presented in Respondent's motion to dismiss. 
The full text of the Cruz decision ends on page 84 of the Appendix. Page 85-88 of the Appendix contains general information about housing court. While Mr. Chinweze did not indicate the source of this information, the Court recognizes this as being from the New York Unified Court System's website.[FN5]
Most of the text included in the Appendix is from a page entitled "Starting a Case" which is reachable from the main Housing Court page of the nycourts.gov website if you click on "non-payment" at the bottom of the page under "Case Types." Mr. Chinweze does not provide any discussion of analysis regarding how these pages of the nyc.courts.gov website have any relevance to the issues raised in Respondent's motion to dismiss.
At the bottom of page 88 of the Appendix, Mr. Chinweze includes the full text of CPLR [*4]§3012. Mr. Chinweze does not provide any explanation of why this provision of the CPLR is relevant to the issues in Respondent's motion to dismiss. CPLR §3012 addresses service of pleadings and demand for complaint. Respondent did not raise an issue regarding service of the pleadings in her motion to dismiss.
In the middle of page 90 of the Appendix, Mr. Chinweze cites Toiny, LLC v. Rahim, 214 AD3d 1023 (App. Div., 2nd Dept. 2023) and provides the full text of the decision. Once again, Mr. Chinweze does not provide any explanation as to why this decision is relevant. He only states that it "is on point." Rahim involved an action to foreclose on a mortgage. The trial court had denied a motion by plaintiff to amend its reply to the defendant's counterclaim. The Appellate Division reversed the decision citing the text of CPLR §3025(b) and prior appellate case law establishing that amendments to pleadings are to be freely granted unless the proposed amendment is palpably insufficient or patently devoid of merit. The Court is unclear what the decision in Rahim has to do with this case. Petitioner did file a motion to amend its petition, but that motion was granted. Respondent's motion to dismiss questioned the sufficiency of the rent demand not the petition. Petitioner did not cross-move to amend the rent demand. Even if Petitioner did so, predicate notices may not be amended. Chinatown Apartments, Inc. v. Chu Cho Lam, 51 NY2d 786 (1980).
At the bottom of page 91 of the Appendix, which is labeled as Section 8, Mr. Chinweze cites to People v. Common W. LLC. This is the first case cited by Mr. Chinweze in the Appendix that is not followed by the full text of the decision. Mr. Chinweze fails to provide the full cite for the case. The Court was able to locate the case People v. Commons W., LLC, 80 Misc 3d 447 (Sup. Ct., Cortland Cty. 2023). The analysis of People v. Commons W., LLC provided under section 8 of the Appendix appears to be copied from some uncited source. It appears to be a summary of the decision but contains references to footnotes despite there being no footnotes anywhere in the Appendix. People v. Commons W., LLC found that the source of income discrimination provisions of the Human Rights Law are unconstitutional because they violate the 4th Amendment of the United States Constitution. Respondent's motion to dismiss was also seeking, in the alternative, a stay of this proceeding while a case was pending regarding Petitioner's alleged violation of the Human Rights Law. However, this Court's May 21, 2025 Decision/Order denied the portion of Respondent's motion seeking to stay the proceeding as moot given that the Court granted the portion of the motion seeking to dismiss the proceeding. 
On page 92 of the Appendix, after a paragraph explaining the People v. Commons., LLC decision, Mr. Chinweze states in underlined text: "This case was reviewed on May 31, 2025." This statement is followed by a paragraph stating: "In a recent New York Supreme Court or Appellate Court decision, it was ruled that a landlord can recover late fees and penalties even where a formal written lease has not been signed, based on the tenant's implied agreement to the payment terms and the landlord's acceptance of the rent. This ruling emphasizes the landlord's right in the context of late payments and the legal implications of such agreements. For more detailed information, you can refer to the New York Official Reports or the New York Courts website." This statement immediately follows the discussion of People v. Commons., LLC, but does not address anything remotely related to that case. Later on page 92, Mr. Chinweze has a heading labeled "9. In DOMEN HOLDING CO. v. SANDERS." Under that heading, Mr. Chinweze appears to be quoting from a case summary of Domen Holding Co. v. Sanders which states: "A recent New York Supreme Court or Appellate Court case ruling that allows a landlord to recover late fees and penalties is DOMEN HOLDING CO v. SANDERS (2025). This case [*5]indicates that a landlord can recover such fees even where a formal written lease had not been signed, based on the tenant's implied agreement to the payment terms and the landlord's acceptance of the rent*" The entire paragraph is highlighted. The full text of Domen Holding Co. v. Sanders, 232 N.Y.S.3d 139 (App. Div., 1st Dept. 2025) follows this paragraph. It would appear that the paragraph following the discussion of People v. Commons., LLC was actually referring to Sanders.
Sanders was a case brought in Supreme Court seeking: 1) declaratory relief; 2) a money judgement; 3) possession of the premises; 4) a finding of fraud; and 5) punitive damages. The defendant filed a motion to dismiss the proceeding. The trial court denied the motion to dismiss and the defendant appealed to the Appellate Division, 1st Department. Respondent first argued that case should have been dismissed because Housing Court is the more appropriate forum for such cases. The Appellate Division rejected this argument based on the fact that Supreme Court has general jurisdiction over plenary real property actions. The Appellate Division also noted that the defendant failed to establish any reason why the causes of action for declaratory relief, money judgment, possession, or fraud should be dismissed. The Appellate Division did modify the trial court's decision to dismiss the cause of action for punitive damages as no such cause of action exists. Notably, Sanders does not stand for the propositions cited by either of the paragraphs on page 92 discussing the case. There is nothing in the Sanders decision about late fees or penalties. 
The Appendix ends on page 94. Following the end of the text of the Sanders decision is one final paragraph which states: "A New York City Appellate Court decision that ruled that a landlord can recover late fees and penalties even where a formal written lease has not been signed is Rodriguez v. City of New York. In this case, the Court of Appeals held that landlords can recover late fees and penalties based on the tenant's implied agreement to the payment terms and the landlord's acceptance of rent." This final paragraph does not contain a full cite to Rodriguez v. City of New York. However, the Court noticed that clicking anywhere on the paragraph leads to a copy of the decision on the law.justia.com website. The full cite of the case is Rodriguez v. City of New York, 31 NY3d 312 (2018). In Rodriguez, the Court of Appeals addressed the question of "whether a plaintiff is entitled to partial summary judgment on the issue of defendant's liability, when, as here, defendant has arguably raised an issue of fact regarding plaintiff's comparative negligence." Id. at 315. The plaintiff was a New York City Department of Sanitation employee suing the City of New York for negligence based on an injury he suffered while working. This decision does not in any way address late fees or penalties as stated by Mr. Chinweze in the paragraph citing Rodriguez. 
To briefly summarize the Appendix, Mr. Chinweze cites to a total of ten cases. Mr. Chinweze provided the full text of eight of those cases in the Appendix. The other two cases did not contain full cites, but the Court was able to find one of them without the full cite and the final case included a hyperlink to the decision. While all ten of these cases exist, most of them have nothing to do with the issues presented in Respondent's motion to dismiss. For most of the cited cases, Mr. Chinweze does not provide any discussion or analysis to explain why the cited cases are relevant. For the cases where Mr. Chinweze did provide discussion/analysis, the cases did not in any way stand for the propositions that Mr. Chinweze cited. The Court was dismayed to see that some of the discussion/analysis provided by Mr. Chinweze appeared to be from artificial intelligence generated case summaries which was indicated by the inclusion several times of the statement that "Some case metadata and case summaries were written with the help [*6]of AI [FN6]
." Another indication that the paragraphs of discussion/analysis were copied from another source or were generated by AI is that several paragraphs have superscript for footnotes, but no footnotes are found on any page of the Appendix.
June 2, 2025 Hearing
On June 2, 2025, the Court held a hearing on whether to sanction Mr. Chinweze and/or refer him to the appropriate grievance committee. Mr. Chinweze appeared along with his clients. Counsel for Respondent also appeared. Mr. Chinweze was sworn in and testified as follows:
He began by acknowledging that the cases cited in the April 21, 2025 Affirmation were fake. Initially, Mr. Chinweze did not explain how these fake cases were generated. The Court asked if he used Chatgpt and he denied doing so, but eventually acknowledged that he used Microsoft Copilot ("Copilot") to assist in his research because he was rushing to respond to Respondent's motion to dismiss. He stated that he did the research using Copilot on the night of April 9, 2025. However, he admitted that he did not review the cases provided by Copilot prior to appearing before the Court on April 10, 2025 or prior to filing the April 21, 2025 affirmation. He even admitted that he did not read the cases cited by Respondent in her motion to dismiss.
Mr. Chinweze then contradicted his admission that he used Copilot and got the fake cases from Copilot by alleging that his computer had malware and was hacked. He indicated that the affirmation he prepared, but did not submit, on April 9, 2025 cited different cases than what he submitted in the April 21, 2025 Affirmation. He suggested that the malware or other unauthorized access to his computer resulted in the document being changed to include the fake cases. Mr. Chinweze stated that he had taken the computer to an expert for analysis and requested an adjournment to have the expert come in to testify. Mr. Chinweze did not present as evidence the draft that he allegedly prepared on April 9, 2025.
He also indicated that health issues contributed to his failure to properly research or identify that the cases he was citing were fake. While Mr. Chinweze described some of his symptoms, he failed to disclose any medical condition or provide the Court with any documentation regarding his condition. 
Immediately prior to the start of the hearing, Mr. Chinweze informed the Court that he had filed an affirmation earlier in the day. As stated above, the June 2, 2025 Affirmation filed by Mr. Chinweze included an Appendix of nearly ninety pages. The Court asked Mr. Chinweze why he filed this document. He informed the Court that he filed the Appendix to show the Court what he meant to file. The Court further inquired why he cited Revis v. Schwartz when it was a case addressing the enforceability of an arbitration clause in a contract between a former NFL player and his attorneys. Mr. Chinweze stated that he didn't have the Appendix in front of him, so he was unsure why the case was cited. At this point, the Court closed for lunch.
After lunch, Mr. Chinweze's position changed dramatically. He no longer wished to adjourn for an expert to testify regarding malware or unauthorized access to his computer. He retreated to his original position that he used Copilot to aid in his research and didn't realize that it could generate fake cases. Mr. Chinweze declined to call any other witnesses. Respondent's counsel declined to make a statement or call any witnesses.
[*7]Sanctions
Pursuant to 22 NYCRR §130-1.1, this Court "in its discretion may impose financial sanctions upon any party or attorney in a civil action who engages in frivolous conduct . . . " Conduct is defined as frivolous if, inter alia,"(3) it asserts material factual statements that are false." 22 NYCRR §130-1.1(c). 
22 NYCRR §130-1.1(c) states: "In determining whether the conduct undertaken was frivolous, the court shall consider, among other issues the circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct, and whether or not the conduct was continued when its lack of legal or factual basis was apparent, should have been apparent, or was brought to the attention of counsel or the party." 
While there have been hundreds of cases throughout the country involving the submission of fake cases to courts [FN7]
, the issue has only been briefly addressed by courts in the State of New York. In Matter of Samuel, an attorney filed a reply brief which cited to six cases. 82 Misc 3d 616 (Surrogate's Ct, Kings Cty. 2024). Five of the cases were either erroneous or non-existent. The court found: "that counsel's conduct was frivolous since his reply asserts material factual statements regarding the case law and court holdings that are false. He had ample time available to investigate the legal and factual bases of the contents of his reply . . . " The court also noted that: "it should have been apparent to counsel that his research was completely erroneous by simply checking citations on legal search engines such as Lexis or Westlaw." While the court in Matter of Samuel found that the attorney had committed frivolous conduct within the definition of 22 NYCRR §130-1.1(c), it did not levy sanctions against the attorney. Instead, the court ordered the attorney to appear at a hearing to determine whether sanctions were appropriate [FN8]
. 
Another case in the New York state courts to address this issue was Rotonde v. Stewart Title. Ins. Co., 2025 N.Y.Misc.LEXIS 5377 (Sup. Ct., Westchester Cty. 2025). In Rotonde, the non-existent cases were filed by a pro-se litigant. The court acknowledged that this was sanctionable behavior citing Matter of Samuel but exercised its discretion in issuing a warning that any future citation to nonexistent cases may result in sanctions.
The only other case in New York state courts to address this issue was Dowlah v. Professional Staff Congress. 227 AD3d 609 (App. Div., 1st Dept. 2024). In Dowlah, the plaintiff filed a memorandum of law which cited several nonexistent cases. In a subsequent filing, the plaintiff admitted that he used legal software applications that deploy artificial intelligence. While the Appellate Division cautioned plaintiff "that his pro se status does not excuse his failure to check the legal citations that he offers to a court," there was no discussion of sanctions. Id. at 610.
This Court agrees with Matter of Samuel and Rotonde that the submission of nonexistent cases clearly qualifies as frivolous conduct under 22 NYCRR §130-1.1(c). This leaves the question of the appropriate sanction. None of the factors the legislature asks the Court to [*8]consider under 22 NYCRR §130-1.1(c) would suggest sanctions are inappropriate. Mr. Chinweze was given ample time to file his opposition. Mr. Chinweze was on notice that the cases he cited in the April 21, 2025 Affirmation were fake based on this Court's May 21, 2025 Decision/Order. However, a review of the Appendix submitted by Mr. Chinweze the morning of the hearing provides strong indication that he continued to use artificial intelligence to supply the case summaries given that: 1) those summaries included language that the summaries were generated by AI; and 2) the summaries were attempting to summarize actual cases but the cases did not stand for the propositions contained in those summaries.
22 NYCRR §130-1.2 provides: "The court may award costs or impose sanctions or both only upon a written decision setting forth the conduct on which the award or imposition is based, the reasons why the court found the conduct to be frivolous, and the reasons why the court found the amount awarded or imposed to be appropriate. An award of costs or the imposition of sanctions or both shall be entered as a judgment of the court. In no event shall the amount of sanctions imposed exceed $10,000 for any single occurrence of frivolous conduct."
22 NYCRR §130-1.3 provides: "Payment of sanctions by an attorney shall be deposited with the Lawyer's Fund for Client Protection established pursuant to section 97-t of the State Finance Law . . . The court shall give notice to the Lawyer's Fund of awards of sanctions payable to the fund by sending a copy of the order awarding sanctions, or by sending other appropriate notice, to the Lawyers Fund for Client Protection, 119 Washington Avenue, Albany, NY 12210."
Sanctions under 22 NYCRR §130-1.1 serve two purposes; 1) punishment for past conduct; and 2) to deter future conduct by the parties or the Bar at large. See Levy v. Carol Mgmt. Corp., 260 AD2d 27 (App. Div., 1st Dept. 1999); see also Baradel v. Edelman Arts, Inc., 2025 NY.Misc.LEXIS 5848 (Sup. Ct., NY Cty. 2025).
As noted above, the three cases in New York state courts involving the submission of fake cases did not address the appropriate amount of sanctions. Given the lack of cases in New York state courts addressing this issue, this Court first looks to federal cases in New York where the issue has arisen. In Mata v. Avianca, Inc., US District Judge Kevin Castel sanctioned two attorneys who cited fake cases under Rule 11 of the Federal Rules of Civil Procedure. 678 F.Supp.3d 443(US District Ct., S.D. NY 2023). Rule 11b has similar language to 22 NYCRR §130-1.1(c) defining conduct that is sanctionable under the Federal Rules of Civil Procedure. Judge Castel jointly and severally fined the attorneys in Mata $5,000.00. In Benjamin v. Costco Wholesale Corporation, Magistrate Judge Lee G. Dunst sanctioned an attorney $1,000 pursuant to Rule 11b. 766 F.Supp.3d 419 (Dist. Ct. E.D. NY 2025). In Gurpreet Kaur v. Desso, US District Judge Anne M. Nardacci sanctioned an attorney $1,000 pursuant to Rule 11b for submitting a brief that cited to actual cases but contained quotations from those cases that did not exist. 2025 U.S.Dist.LEXIS 129902 (Dist. Ct., N.D. NY 2025). In Ramirez v. Humala, US District Judge Rachel P. Kovner sanctioned an attorney $1,000 pursuant to Rule 11b for submitting a filing that contained multiple fake cases. 2025 U.S.Dist.LEXIS 91124 (Dist. Ct., E.D. NY 2025). The attorneys in Benjamin, Desso, and Ramirez all acknowledged that they had used generative AI software to conduct the research and did not review the cases generated by the AI before filing.
There have also been many other federal cases where lawyers have been sanctioned under Rule 11b for citing fake cases or real cases with fake quotes. See Jackson v. Auto-Owners Ins. Co., 2025 U.S. Dist.LEXIS 133070 (Dist. Ct., M.D. GA 2025)($1000 sanction); Coomer v. Lindell, 2025 U.S. Dist.LEXIS 123372 (Dist. Ct., CO 2025)($3,000 per attorney); Versant [*9]Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC, 2025 U.S. Dist.LEXIS 98418 (Dist. Ct., S.D. FL 2025)($1,000 to attorney who prepared the document and $500 to co-counsel); Wadsworth v. Walmart Inc., 348 F.R.D. 489 (Dist. Ct., WY 2025)($1,000 per attorney).
Based on a review of the federal cases that sanctioned attorneys under Rule 11b for submitting fake cases, the Court has determined that the $1,000.00 amount in Benjamin, Desso, and Ramirez, as well as most of the other federal cases cited above, is appropriate.
Referral to Grievance Committee
New York's Rules of Professional Conduct for lawyers is codified at 22 NYCRR §1200. Rule 1.1(a) provides: "A lawyer should provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Rule 3.1 tracks the language contained in 22 NYCRR §130-1.1 regarding frivolous conduct. Rule 3.1(a) states: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous." Rule 3.1(b) states: "A lawyer's conduct is 'frivolous' for purposes of this Rule if: (3) the lawyer knowingly asserts material factual statements that are false." Rule 3.3(a))(1) states: "A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer . . . "
22 NYCRR §100.3(D)(2) provides: "A judge who receives information indicating a substantial likelihood that a lawyer has committed a substantial violation of the Rules of Professional Conduct (22 NYCRR Part 1200) shall take appropriate action." Here, there is clearly a substantial likelihood that Mr. Chinweze committed a violation of the Rules of Professional conduct. He acknowledged that his April 21, 2025 Affirmation contained seven fake cases. Those fictitious cases represent material false statements in violation of Rule 3.1(b)(3) and Rule 3.3(a)(1). The question before the Court is whether Mr. Chinweze's conduct in this proceeding represent substantial violations of the Rules of Professional Conduct such that the Court is required to refer Mr. Chinweze to the proper disciplinary authority. The New York Advisory Committee on Judicial Ethics has provided guidance to judges regarding when a referral is required. The Committee stated: "While a judge who concludes that a lawyer's misconduct is a substantial violation of the Rules must take appropriate action, if the misconduct is not so egregious as to implicate the lawyer's honesty, trustworthiness or fitness to practice law, the judge need not necessarily report the lawyer to the appropriate disciplinary authority." NY Jud.Adv. Op. 10-85, 2010 WL 8251253 (2010). 
Upon reviewing the April 21, 2025 Affirmation, Mr. Chinweze's testimony at the June 2, 2025 hearing, and the June 2, 2025 Affirmation/Appendix filed by Mr. Chinweze, the Court has serious concerns about Mr. Chinweze's honesty, trustworthiness, and fitness to practice law. The April 21, 2025 Affirmation contained citation to seven fake cases. Mr. Chinweze admitted this at the hearing and in his June 2, 2025 Affirmation. While this alone represents frivolous conduct under 22 NYCRR §130-1.1 and violates Rule 3.1 of the Rules of Professional Conduct, had Mr. Chinweze simply come to the hearing acknowledging that he had used Copilot to conduct his research, was unaware that the software could produce fake cases, and apologized for his mistake the Court would have likely determined that a sanction was sufficient to address the frivolous conduct. 
However, Mr. Chinweze's conduct at the hearing and the Appendix to the June 2, 2025 Affirmation escalated his conduct from merely frivolous to egregious misconduct which implicates his honesty, trustworthiness, and fitness to practice law. The Appendix is an incoherent document that is eighty-eight pages long, has no structure, contains the full text of most of the cases cited, shows distinct indications that parts of the discussion/analysis of the cited cases were written by artificial intelligence, cites multiple cases that do not have anything to do with the issues presented in Respondent's motion to dismiss, and cites to multiple cases for propositions that are not remotely supported by the case cited. Mr. Chinweze testified at the hearing that he has been an attorney for over twenty years [FN9]
. At the time the June 2, 2025 Affirmation was filed to NYSCEF, Mr. Chinweze had been made aware by the Court of the allegedly frivolous nature of his April 21, 2025 Affirmation. The Court did not require a written filing to be made in response to its order to show cause why he should not be sanctioned. Mr. Chinweze decided he wanted to show the Court what he meant to file in opposition to Respondent's motion to dismiss. While all of the cases cited in the Appendix actually exist, the Appendix is evidence of greater misconduct than the April 21, 2025 Affirmation that cited only to fictitious cases. None of the cases cited in the Appendix address the issues raised by Respondent's motion to dismiss. Mr. Chinweze did not provide any discussion/analysis for most of the cases cited. For the cases where he did provide discussion/analysis of the case, none of the cases cited remotely stood for the propositions that he cited. The Appendix is also drafted in an extraordinarily unprofessional manner. Mr. Chinweze clearly copied and pasted his discussion/analysis of these cases from case summaries which appear to have been generated by artificial intelligence. This was clear from the fact that those summaries contained statements indicating that such summaries may have been generated by artificial intelligence. 
Further, Mr. Chinweze displayed a distinct lack of candor at the hearing. He began by credibly stating that he used Copilot to conduct the research that he used to prepare the April 21, 2025 Affirmation. However, he then made the incredible and unsupported statement that his computer had been hacked and that what he had initially generated was changed between when he initially drafted the April 21, 2025 Affirmation and when he filed it. Mr. Chinweze undermined his own credibility on this issue by going into detail about the alleged hacking before lunch and then coming back after lunch and retracting his statements on the issue. 
In light of the New York Advisory Committee on Judicial Ethics opinion interpreting 22 NYCRR §100.3(D)(2), the Court is compelled to refer Mr. Chinweze to the appropriate grievance committee given that his misconduct was substantial and seriously implicated his honesty, trustworthiness and fitness to practice law.
Conclusion
The Court ordered Mr. Chinweze to show cause why he should not be sanctioned pursuant to 22 NYCRR §130-1.1(c) based on his citation to seven nonexistent cases in his April 21, 2025 Affirmation. The Court conducted a hearing on June 2, 2025. Based on the April 21, 2025 Affirmation, Mr. Chinweze's testimony at the June 2, 2025 hearing, and Mr. Chinweze's [*10]written Affirmation/Appendix filed on June 2, 2025, the court finds as follows:
1. Pursuant to 22 NYCRR §130-1.1, Mr. Chinweze is sanctioned $1,000.00 for his frivolous conduct;
2. Mr. Chinweze shall pay the $1,000.00 to the Lawyers Fund for Client Protection, 119 Washington Avenue, Albany, NY 12210 and file proof of payment to NYSCEF within twenty-five days. As per 22 NYCRR §130-1.3, the court will send a copy of this Decision/Order to the Lawyer's Fund for Client Protection;
3.The Court shall refer Mr. Chinweze to the State of New York Grievance Committee for the Second, Eleventh & Thirteenth Judicial Districts [FN10]; and
4. Mr. Chinweze is directed to serve a copy of this Decision/Order on Petitioners by first class mail with certificate of mailing and file proof of service to NYSCEF within ten days.
This constitutes the Decision and Order of the Court.
Dated: July 29, 2025
Jamaica, New York
Hon. Kimon C. Thermos, JHC

Footnotes

Footnote 1:For a more complete procedural history, see this Court's May 21, 2025 Order.

Footnote 2:Copilot is a product offered by Microsoft, not Google. See 
https://www.microsoft.com. At the June 2, 2025 hearing, Mr. Chinweze referred to Microsoft Copilot

Footnote 3:The Court has decided to underline the fictitious cases cited by Mr. Chinweze in his April 21, 2025 Affirmation to differentiate them from the actual cases he cites in the Appendix which are italicized. 

Footnote 4:The quoted text includes a superscript 1 indicating a footnote, but there is no footnote at the bottom of page 59 or any other page of the Appendix.

Footnote 5:https://ww2.nycourts.gov/courts/nyc/housing/startingcase.shtml

Footnote 6:See pages 12,34, and 58 of the Appendix

Footnote 7:
https://damiencharlotin.com/hallucinations/ lists 140 cases in the United States and 230 worldwide in which fake cases or fake quotes were submitted to the court in the last few years

Footnote 8:It does not appear that a subsequent decision regarding sanctions was published in this case.

Footnote 9:The Court confirmed this by taking judicial notice of the Attorney Registration page of the New York Unified Court System's website which indicates that Mr. Chinweze was admitted to practice law in the State of New York in 2002.

Footnote 10:Based on his Notice of Appearance in this proceeding (NYSCEF #14) and the New York Unified Court System's Attorney Registration records, Mr. Chinweze maintains an office in Brooklyn, NY