Grey v LIC Dev. Owner, L.P. (2026 NY Slip Op 01458)

Grey v LIC Dev. Owner, L.P.

2026 NY Slip Op 01458

Decided on March 17, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 17, 2026

Before: Manzanet-Daniels, J.P., Kapnick, Shulman, Hagler, JJ. 

Index No. 151699/22|Appeal No. 6104-6105|Case No. 2025-04182, 2025-05334|

[*1]Willam Grey, etc., Plaintiff-Appellant-Respondent,
vLIC Development Owner, L.P., Defendant-Respondent-Appellant. 

Newman Ferrara LLP, New York (Roger A. Sachar of counsel), for appellant-respondent.
Belkin � Burden � Goldman, LLP, New York (Matthew S. Brett of counsel), for respondent-appellant.

Order, Supreme Court, New York County (Arlene P. Bluth, J.), entered April 4, 2025, which granted in part and denied in part plaintiff's motion for summary judgment as to liability on its class claims for rent overcharges and related declaratory and injunctive relief and granted in part and denied in part defendant's motion for summary judgment dismissing the class complaint, unanimously modified, on the law, to declare the early occupancy license agreements void, grant plaintiff's motion for summary judgment with respect to any class member who received a renewal lease at an unauthorized lease interval resulting from the use of an early occupancy license agreement, vacate any rent increases taken at unauthorized lease intervals, impose a rent freeze until the registrations are corrected, and otherwise affirmed, without costs. Order, same court and Justice, entered August 8, 2025, which, to the extent appealed from and appealable, denied defendant's motion to renew its prior motion, unanimously affirmed, without costs.
The motion court properly denied that part of plaintiff's motion for summary judgment on the class claims for rent overcharges arising from the rent concessions offered before the enactment of the Housing Stability and Tenant Protection Act (HSTPA) (L 2019, ch 36) on June 14, 2019. Under Rent Stabilization Code (9 NYCRR) § 2521.1(g), where, as here, defendant as the owner of the building receives tax benefits under RPTL 421-a (the 421-a program), "[t]he initial legal regulated rent for a housing accommodation . . . constructed pursuant to [RPTL 421-a] shall be the initial adjusted monthly rent charged and paid but not higher than the rent approved by HPD."
The Court of Appeals in Burrows v 75-25 153rd St., LLC (44 NY3d 74 [2025]) found that pre-HSTPA, consistent with "agency guidance applicable at the time," a two-month rent concession for a specified period did not constitute a preferential rent (id. at 84). That agency guidance includes the Division of Housing and Community Renewal (DHCR) fact sheet 40, which we have previously credited as a valid interpretation of the law (see e.g. Flynn v Red Apple 670 Pac. St., LLC, 200 AD3d 607, 609 [1st Dept 2021]). Since pre-HSTPA rent concessions were tied to specific months and did not exceed DHCR's general limit on concessions to three months (Matter of Parsons Manor LLC, DHCR Adm Rev Dckt No. GS110023RO [June 28, 2019]), the pre-HSTPA rent concessions here did not affect the legal regulated rent under DHCR fact sheet 40.
The motion court also correctly found that when the law changed under the HSTPA, DHCR's guidance changed as well (see e.g. Viohl v Chelsea W26 LLC, 241 AD3d 1187, 1189 [1st Dept 2025]), warranting summary judgment in plaintiff's favor on the class claims for rent overcharges and related injunctive and declaratory relief arising from rent concessions offered after the HSTPA's June 14, 2019 enactment. DHCR's revised fact sheet 40, consistent with Rent Stabilization Code § 2521.1(a), defines a preferential rent as "a rent which an owner agrees to charge that is lower than the legal regulated rent that the owner could lawfully collect." It does not address concessions at all. Accordingly, the motion court properly rejected defendant's contention that DHCR's change of guidance in fact sheet 40 upon the enactment of the HSTPA was unexplained or otherwise arbitrary and capricious (cf. Matter of Richardson v Commissioner of N.Y. City Dept. of Social Servs., 88 NY2d 35, 39 [1996]).
Also unavailing is defendant's contention that plaintiff was not entitled to summary judgment because his motion did not include an affidavit by a person with knowledge, which is unnecessary where, as here, the veracity of the relevant documents in the record are not in dispute (see e.g. NÁjera-OrdÓÑez v 260 Partners, L.P., 217 AD3d 580, 581 [1st Dept 2023]; see also Zuckerman v City of New York, 49 NY2d 557, 563 [1980]).
However, modify the court's order to grant plaintiff's motion for summary judgment with respect to any class member who received a renewal lease, pre- or post-HSTPA, at an unauthorized lease interval resulting from defendant's use of early occupancy license agreements, vacate any rent increases taken at unauthorized lease intervals, and impose a rent freeze under Rent Stabilization Law of 1969 (Administrative Code of City of NY) § 26-517(e) until the registrations are corrected. Although the motion court properly found that the rent concessions set forth in the early occupancy licenses did not violate pre-HSTPA law, the court should not have limited its analysis of the early occupancy license agreements to that issue.
Leaving aside the concessions, defendant's use of early occupancy license agreements expressly violated the rent stabilization laws. Each tenant who received an early occupancy "license" was required to agree in relevant part, "It is expressly understood and agreed that the occupancy by the Licensee pursuant to this License Agreement is exempt from and is not covered by the Rent Stabilization Law, the Rent Stabilization Code, the City Rent Law or the Rent and Eviction Regulations." The license agreement also stated that defendant may terminate the license for any lease default by 10-day notice to quit, and that in the event of any inconsistency between the early occupancy rider and the lease, the rider governed.
"It is well settled that an agreement waiving a benefit of the rent stabilization laws is void as against public policy" (Liggett v Lew Realty LLC, 42 NY3d 415, 417 [2024]; see Rent Stabilization Code § 2200.15, 2520.13). Where an agreement is void, "neither party is entitled to rely on it," but it may result in the finding of an overcharge (Riverside Syndicate, Inc. v Munroe, 10 NY3d 18, 24 [2008]). It is immaterial that defendant did not attempt to evict any tenant by use of a notice to quit, as the license agreement was void irrespective of defendant's further conduct (cf. Matter of Gassama v New York State Dept. of Hous. & Community Renewal, 226 AD3d 589, 590 [1st Dept 2024] ["The landlord's licensure scheme was unlawful . . . [but] did not taint the reliability of the base date rent"]). Although defendant further asserts that plaintiff was not harmed by the early occupancy license agreement because the loss of the right to the statutorily prescribed one- or two- year lease and renewal terms was not meaningful, this choice affects how the Rent Guidelines Board increases are applied (see Rent Stabilization Law § 26-511[c][4]; Rent Stabilization Code § 2522.5[c]).
Even where an agreement benefits the tenant, a landlord may not require a tenant to waive the application of rent stabilization protections to prevent the legal regulated rent from decreasing due to market forces (see Riverside Syndicate, Inc., 10 NY3d at 23 ["Agreements like the one at issue here distort the market without benefitting the people the rent stabilization laws were designed to protect"]). In these circumstances, the early occupancy license agreements must be declared void, and the leases extended to proper one- or two-year terms (id. at 24). Accordingly, with respect to any class member who received a renewal lease at an unauthorized lease interval under the void early occupancy license agreements, the unauthorized rent increases must be vacated, and the rent frozen until proper rent registrations are filed (Rent Stabilization Law § 26-517[e]).
The court correctly denied defendant's motion to renew, as neither the Court of Appeals decision in Burrows (44 NY3d at 84) nor the proposed and unadopted legislation to codify the definition of net effective rents arising from concessions constitute "new facts not offered on the prior motion that would change the prior determination or . . . demonstrate that there has been a change in the law that would change the prior determination" (CPLR 2221[e][2]). Because the initial April 4, 2025 order specifically cited and properly applied Burrows in defendant's favor, it did not represent a basis for renewal. With respect to the unadopted legislation, "[l]egislative inactivity is inherently ambiguous and affords the most dubious foundation for drawing positive inferences" (Roberts v Tishman Speyer Props., L.P., 13 NY3d 270, 287 [2009] [internal quotation marks omitted]). 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 17, 2026